People of the State of Illinois, Plaintiff-Appellee,
v. William Kielczynski, Defendant-Appellant.

Gen. Nos. 54,089, 54,091. (Consolidated.)

First District, First Division.

October 13, 1970.

Sherman, Schachtman & Stein, of Chicago (Jack G. Stein, Albert Brooks Friedman, and Gerald Nussbaum, of counsel), for appellant.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Robert A. Novelle and Anthony M. Montemurro, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

In a bench trial defendant William Kielczynski was found guilty of gambling in violation of Ill Rev Stats, c 38, § 28–1(a)(5) (1967). He was fined $75. On appeal, defendant contends that (1) the court erred in denying defendant's motions to quash the search warrant and to suppress the evidence; (2) he was not charged with a crime in the complaint; and (3) he was not proved guilty beyond a reasonable doubt.

On January 12, 1968, Chicago Police Officer John Tobin appeared before a judge in the Circuit Court of Cook County and presented a complaint for the issuance of a search warrant, alleging that through information received from a reliable informant, corroborated by his dialing a number supplied by the informant and listening to the informant place a wager on a horse race over the phone, he had probable cause to believe that instrumentalities of gambling were located "upon the (person and) premises" located at 4523 West Belmont, Chicago, which is a service station owned and operated by the defendant. A search warrant was issued, dated January 12, 1968, in which the court stated:

". . . Upon examination of the complaint, I find that it states facts sufficient to show probable cause.

"I therefore command that you search The Belmont and Kolmar Service Station, located at 4523 West Belmont, Chicago, Cook County, Illinois, and seize all instruments, implements, and apparatus, kept, used, or provided to be used in illegal gambling, to wit:

"Scratch Sheets, records of bets on horse races and the telephone numbered 283–9259, which have been used in the commission of or which constitute evidence of the offense of gambling. . . ."

Pretrial motions to quash the search warrant and to suppress physical evidence were heard and denied by the trial court.

At the trial, Officer Tobin testified as follows: "My name is John Tobin, assigned to the gambling unit of the Vice Control Division. On January 12, 1968, I went to 4523 W. Belmont with a search warrant. Upon entering the premises, I observed Mr. Kielczynski standing at the South end of the gas station. I approached him, announced my office and informed him that I had a search warrant. A search of his person revealed slips of paper in his shirt pocket and $53.00 in currency. The slips of paper, marked State's Group Exhibit A for identification, are 3 slips of paper, $53.00 in United States currency and seventy-five parlay cards which I found and a scratch sheet of January 12, 1968 without markings on it which was in his rear pocket. In my opinion, the slips of paper are records of bets on horse races and the other items are gambling paraphernalia."

On cross-examination Officer Tobin stated: "I took the slips of paper and money from a uniform pocket. I believe he had two uniforms on, one over the other. I don't recall, but it was an extremely cold day. The parlay cards were taken from a desk in the office and the unmarked scratch sheet from his rear pants pocket. When we told defendant I was a police officer and had

a warrant to search the premises he gave me no argument, and did not interfere with my search in any way."

The defendant testified that he owned the premises herein, which was a "gas station" and on January 12, 1968, he and his son were working there. He further testified that prior to the day in question one William Spila had worked there, and that the uniforms worn while working were owned by the oil company servicing his station. He stated it was cold that day and he was wearing two such uniforms, which were in the nature of coveralls. He further stated he knew nothing of the items recovered by Officer Tobin, but otherwise corroborated the officer's testimony.

Initially, defendant contends that the trial court erred in denying the motions to quash the warrant and to suppress the evidence obtained at the service station. He argues that "the warrant did not describe a person to be searched, that the complaint which led to the issuance of [the search warrant] did not state facts sufficiently to show probable cause, that it was predicated solely on hearsay information not corroborated. Defendant was not allowed to present evidence in support of the written Motion which would go beyond the four corners of the search warrant and affidavit. The Motion to Quash the search warrant was denied without any evidence being presented by the plaintiff against said Motion. The Motion to Suppress was similarly denied."

Defendant, to support his contention that it was improper to deny defendant's motions to quash the warrant and suppress the evidence, relies on People v. Bak, 45 Ill2d 140, 258 NE2d 341 (1970), and People v. Mitchell, 45 Ill2d 148, 258 NE2d 345 (1970).

■ The State asserts that defendant's reliance on the foregoing cases is without merit because "on March 24, 1970, the Supreme Court reversed its previous position in these cases and held that a defendant would not be allowed to go beyond the four corners of the warrant to challenge its issuance on probable cause." Our examination of the opinions in both cases verified the assertion of the State.

In People v. Bak, supra, the court stated (p 144):

"This majority of the court believes that both constitutions [United States and Illinois] contemplate only that a judicial officer find probable cause for the issuance of a warrant based on the evidence under oath that has been presented to him by the one requesting the warrant. It is contemplated that the credibility of the affiant or others offering evidence is for the judicial officer. If he finds the evidence worthy of belief and sufficient to form probable cause, this judicial determination cannot be relitigated through a later disputing of the evidence. . . .

"The view that probable cause for the issuance of a search warrant is to be tested by the evidence originally presented to the judicial officer and that alone is consistent with holdings that the prosecution is precluded from offering supplemental information to sustain a showing of probable cause. The Supreme Court in Aguilar v. Texas, 378 US 108, 109, 12 L Ed2d 723, 725, n 1, said, 'It is elementary that in passing on the validity of a warrant, the reviewing court may consider *only* information brought to the magistrate's attention.' [P 145.]

". . .

"Too, the view permitting a challenge to the matters on which probable cause was found would often, if not typically, result in one judicial officer originally evaluating the credibility of the affiant and another reassessing it in the later motion to suppress. . . . The majority of this court consider that successive or split evaluations by different judicial officers of the credibility of the affiant and others originally offering evidence were not contemplated in the search warrant procurement procedure." [P 146.]

In People v. Mitchell, the court stated (pp 152–153):

"Following the decision of the Supreme Court of the United States in Jones v. United States (1960), 362 US 257, at 272, 4 L Ed2d 697, 708, 80 S Ct 725, we stated in People v. Jackson, 22 Ill2d 382, 387, that 'hearsay may be used to establish probable cause for a warrant, so long as there is a substantial basis for crediting the hearsay.' "

Also, on pages 153–154:

". . . 'probability, and not a prima facie showing, of criminal activity is the standard of probable cause, . . . ; that affidavits of probable cause are tested by much less vigorous standards than those governing the admissibility of evidence at trial, . . . ; that in judging probable cause issuing magistrates are not to be confined by niggardly limitations or by restrictions on the use of their common sense, . . . ; and that their determination of probable cause should be paid great deference by reviewing courts, . . . .' . . . Accordingly, after thorough review of the warrants in question, we find that they were properly issued on probable cause and subscribe to the standards enumerated in Aguilar. Here, the affiants specifically averred that they had received information from a 'reliable informant' who had in the past supplied them with information which had proved true, exact and accurate and which resulted in enumerated arrests and convictions. Further, the affiants specifically related the 'underlying circumstances' from which the informant concluded that illegal gambling operations were being conducted, i. e., when the informer desired to make a wager on a horse race, he would call a specific telephone number. Too, to the extent that affiants overheard the conversation, albeit one-sided, what they heard (the informer placing the bet and 'I may call you later' or 'That's all for now') corroborated, to a limited extent, the informer's tip. Accordingly, after giving due deference to the warrants in question . . . and after thorough analysis of the 'underlying circumstances' . . . we conclude

that the warrants here issued were based on probable cause."

■ We conclude the court properly denied defendant's motions to quash the search warrant and to suppress the evidence because the search warrant was issued on probable cause within the standards enumerated in both People v. Bak and People v. Mitchell, supra.

Next considered is defendant's contention that he was illegally searched, and the trial court erred in failing to grant his motion to suppress the evidence. Defendant argues that the slips of paper, money and scratch sheet found on his person were inadmissible because the search was illegal, not having been authorized by the search warrant. Defendant points out that while the complaint for the warrant specifically sought to name a person to be searched, the magistrate or judge who signed it chose only to enumerate the premises and did not name any persons. Defendant argues that the evidence indicates that the officer first searched the person and then the premises, which he was not authorized to do.

■ It has been held in Illinois that a search warrant for a person must describe the person to be searched as specifically and accurately as is required in regard to the description of the place to be searched in the case of a warrant to search a place. (People v. Staes, 92 Ill App2d 156, 235 NE2d 882 (1968).) We do not believe this rationale applies here. In the instant case the place and things to be found were described with particularity in the search warrant, and the officer searched a person who happened to be at that place. Ill Rev Stats, c 38, § 108–9 states:

> "Detention and Search of Persons on Premises.) In the execution of the warrant the person executing the same may reasonably detain to search any person in the place at the time:
>
> "(a) To protect himself from attack, or
> "(b) To prevent the disposal or concealment of any instruments, articles or things particularly described in the warrant."

Similar searches have been found reasonable. (People v. Harrison, 83 Ill App2d 90, 226 NE2d 418 (1967); People v. Pugh, 69 Ill App2d 312, 217 NE2d 557 (1966).) We conclude that the search of defendant's person, who was on the premises described in the instant search warrant, was reasonable and necessary for the execution of the warrant. Therefore, the motion to suppress the evidence recovered from this search was properly denied.

Defendant next contends that he was not charged with a crime. The record shows that the complaint stated: "William Kielczynski, has, on or about 12 January, 1968, at 4523 West Belmont Avenue, committed the offense of Gambling, in that he used or kept a book, or instrument, or apparatus, for the purpose of recording and registering bets and wagers, in violation of Chapter 38, Section 28–1(a)(5), of the Illinois Revised Statutes." The statute provides in pertinent part:

> "(a) A person commits gambling when he:
> "...
> "(5) Knowingly owns or possesses any book, instrument or apparatus by means of which bets or wagers have been, or are, recorded or registered."

Defendant argues that the complaint did not set out the nature and elements of the crime of gambling under the statute because the charge contained the words "for the purpose" instead of the words "have been, or are." In support, defendant cites People v. Galan, 110 Ill App2d 98, 249 NE2d 118 (1969). This case is not in point here. There the court stated (p 100):

> "The State attempted to prove the defendant guilty by evidence of an effort to dispose of instruments which the gambling community utilizes to record wagers. This was insufficient to prove an essential element of the crime: that wagers had been or were recorded on the instruments seized."

The State argues that the complaint herein met the tests set forth in People v. Patrick, 38 Ill2d 255, 230 NE2d 843 (1967), where the court stated (p 258):

"An indictment which charges an offense in the language of the statute is deemed sufficient when the words of the statute so far particularize the offense that by their use alone an accused is apprised with reasonable certainty of the precise offense with which he or she is charged."

█ We agree. The complaint adequately informed defendant of the precise offense with which he was charged, and he was not prejudiced by the inclusion of the words "for the purpose."

Finally, the defendant contends that he was not proved guilty beyond a reasonable doubt. He argues that he testified that he had no knowledge of the betting slips, scratch sheet or parlay cards, that the uniforms belonged to the oil company and a Mr. Spila had worked at the station before January 12, 1968. It is the defendant's contention that the paraphernalia found could have belonged to Mr. Spila or someone else. He argues that there is no evidence of the age of the betting slips or parlay cards, and that they could have been placed there by any number of innocent ways. In support defendant cites People v. Lucas, 109 Ill App2d 303, 248 NE2d 706 (1969), where the court stated (p 307):

"The fact of possession must be shown beyond a reasonable doubt. It is also the law that where conditions may be explained on a hypothesis of innocence, the courts must accept that explanation. People v. Gregor, 359 Ill 402, 194 NE 550."

█ The State argues that its proof that defendant had in his possession betting slips, parlay cards and a scratch sheet, and that the defendant was the owner of the gas station and was in control of it at the time these items were seized, proved defendant's guilt beyond all reasonable doubt. The State asserts that the evidence produced by the State was conclusive, and the only question for review is the credibility of the witnesses, and since it was the duty of the trial judge to weigh and assess the credibility of the witnesses (People v. Batie, 113 Ill App2d 139, 251 NE2d 769 (1969)), this court should not reverse its judgment.

The evidence here shows that defendant had on his person betting slips and a scratch sheet. On the premises of the station owned and operated by defendant seventy-five parlay cards were found. In People v. Pugh, 36 Ill2d 435, 223 NE2d 115 (1967), the court stated (p 436):

> "[W]here narcotics are found on the premises under the control of defendant, this fact, in and of itself, gives rise to an inference of knowledge and possession by him which may be sufficient to sustain a conviction for unlawful possession of narcotics, absent other facts and circumstances which might leave in the mind of the jury, or of the court where a jury is waived, a reasonable doubt as to his guilt."

Also, it is said in People v. Mitchell, 45 Ill2d 148, 258 NE2d 345, at page 154:

> "It is well established that we will not disturb the findings of the trier of fact and substitute our own conclusions unless the proof is so unsatisfactory as to justify a reasonable doubt as to defendant's guilt."

After reviewing the evidence as a whole, we conclude that the defendant herein was proved guilty beyond a reasonable doubt.

For the reasons stated, we find that the judgment should be affirmed.

Affirmed.

BURMAN, P. J. and ADESKO, J., concur.