No. 46,448

STATE OF KANSAS, *Appellee,* v. HERMAN LOUDERMILK, *Appellant.*

(494 P. 2d 1174)

Opinion filed March 4, 1972.

*John B. Pyles,* of Wichita, argued the cause and was on the brief for the appellant.

*Keith Sanborn,* County Attorney, argued the cause, and *Vern Miller,* Attorney General, and *J. Stewart McWilliams,* Deputy County Attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

KAUL, J.: This is an appeal from a felony conviction for the possession of heroin under the Uniform Narcotic Drug Act (K. S. A. 65-2501, *et seq.*).

Defendant, Herman Loudermilk, waived a jury and after a trial and conviction by the court was sentenced to a term of not less than one nor more than ten years pursuant to K. S. A. 1971 Supp. 65-2519a and 21-4501 (*d*). (He was committed to the custody of the State Director of Penal Institutions.)

The issues on appeal involve the search of defendant's person and seizure of a packet of heroin found in his billfold.

Carl Arbogast, a detective with the Wichita Police Department, filed an application for a search warrant before a judge of the Common Pleas Court of Sedgwick County pursuant to the provisions of K. S. A. 1971 Supp. 22-2502. The application gave the location and described the building which was the subject of the search. It further recited that Arbogast had probable cause to believe that possession of opium and instrumentalities, and evidence of such offense, were located on the described premises. An affidavit accompanied by the application in which Arbogast recited in detail observations made of persons going to and from the premises during a surveillance which apparently had been conducted prior to the application for a search warrant. Arbogast also recited the details of finding opium on a person who had just left the premises; and further that on numerous occasions he had observed persons, known to him to have been convicted of drug law violations, enter the building described.

A search warrant was issued specifying an undetermined amount of opium and commanding "forthwith to search the person, place, thing or means of conveyance hereinbefore specified for such items holding them to be dealt with according to law."

On January 26, 1971, Detective Arbogast and other officers executed the search warrant. The inventory and return of the search warrant disclosed various items, which were seized, including a measuring spoon, a "hash pipe," tablets, capsules, and a tinfoil packet of white powder.

The tinfoil wrapped packet of white powder was found in defendant's billfold during a search of his person. A Forensic Chemist with the Wichita Police Department performed laboratory tests on the powder and identified it as "diacetylmorphine hydrochloride," a derivative of opium, commonly called heroin.

Defendant was arrested and charged. He filed a motion to suppress evidence directed at the billfold and heroin. The motion was heard and denied by the administrative judge of the district court.

On May 3, 1971, defendant waived a jury and was tried and convicted for possession of heroin. The billfold and heroin were admitted into evidence over defendant's objection.

The brief record on appeal discloses that Detective Arbogast testified that when he entered the premises there were three persons present—Everett Anderson, Margaret Redman and defendant.

That upon his entry, Arbogast displayed his credentials, the search warrant, stated his business, and advised all present of *Miranda*. He then proceeded to search Anderson and Loudermilk. When searching Loudermilk he found the wallet containing the heroin. Apparently, Margaret Redman was not searched. Upon the discovery of the tinfoil packet of white powder, Loudermilk was placed under arrest.

In his brief on appeal, defendant argues the heroin was the fruit of an illegal search and thus was erroneously admitted into evidence. He says first, that the search, under the circumstances shown, was not authorized by the statute (K. S. A. 1971 Supp. 22-2509); second, that the search was in violation of the Fourth Amendment to the Constitution of the United States; and further, if the search was authorized by the statute then the statute is unconstitutional.

K. S. A. 1971 Supp. 22-2509, of the new Kansas code of criminal procedure, provides for the detention and search of persons found on the subject premises in the execution of a search warrant. The statute reads:

"In the execution of a search warrant the person executing the same may reasonably detain and search any person in the place at the time;

"(*a*) To protect himself from attack, or

"(*b*) To prevent the disposal or concealment of any things particularly described in the warrant."

At the outset, it should be noted that the statute only authorizes "reasonable" detention and search of a person under the conditions specified. It logically follows that the statute cannot be said to be in violation of the Fourth Amendment to the Constitution of the United States or Section 15 of the Kansas Bill of Rights. The provisions of the Fourth Amendment prohibit only unreasonable searches and seizures. (*State v. Wood*, 197 Kan. 241, 416 P. 2d 729; *State v. Thomas*, 205 Kan. 442, 469 P. 2d 279; and *Boyd v. United States*, 116 U. S. 616, 29 L. Ed. 746, 6 S. Ct. 524.)

We turn then to the question whether the search of defendant and seizure of the billfold and heroin were reasonable within the context of the statute under the facts and circumstances shown to exist.

Notes of the Advisory Committee on Criminal Law Revision, established by the Kansas Judicial Council, disclose that 22-2509, *supra*, was adopted from the Illinois Revised Statute (S. H. A. ch. 38,

§§ 108-8, 108-9). A comparison of the respective Kansas and Illinois statutes reveal no difference of any significance.

The purpose and need for the Illinois statute are set out in the comments of the Illinois Revision Committee and published with the statute. The comments read:

"This section is intended to replace section 699 of chapter 38. The need for a search of the person will not usually arise when the parties are before the judge but rather when the officer first arrives at the place where the goods are to be seized. The protection is given in all cases since the danger to be avoided is always present. In addition, it is clear that the purpose of the warrant would be thwarted were not the officer given the second power found in subsection (b), i. e., to search the person for the things to be seized. The need for this power arises most often in the narcotics cases where disposition is most easily effected.

" 'Any person on the premises' would include the limits prescribed in the warrant itself.

"The committee felt that this section is necessary because it gives the officer a clear outline of his power in executing the warrant and removes doubt from a rather cloudy area of the law. Furthermore, if a judge decides there is probable cause for issuing the warrant in the first place, then this power given to the officer which is parasitic to the warrant should not be considered excessive in the hands of the executing officer."

Since its enactment in 1963, the reasonableness of the search of a person by officers executing a premises search warrant has been examined by the Illinois Court of Appeals in three cases.

In the first case, *People v. Pugh*, 69 Ill. App. 2d 312, 217 N. E. 2d 557, (1966), Raymond Pugh and Jessie Pugh were charged in separate indictments with the unlawful possession of narcotic drugs. The indictments were consolidated for trial and both defendants were convicted. The search warrant, which gave rise to the arrest of the Pughs, was issued upon a complaint based upon information given by an informer. The complaint described purchases of drugs in an apartment in a certain building in Chicago under circumstances quite similar to those described by Detectives Arbogast in his affidavit in the case at bar. When the Illinois officers executed the search warrant only Jessie Pugh was present in the apartment. While the officers were searching the apartment, Raymond Pugh rang the doorbell and was admitted. On his entrance Raymond was searched and 42 foil packages containing heroin were removed from his pants pockets. A motion to suppress was denied, and the packets were admitted into evidence at the trial over Raymond's objection.

On appeal Raymond advanced arguments similar to those made by defendant in the instant case. Raymond argued that since he was not named in the search warrant, his search and subsequent arrest were both without probable cause. In a unanimous decision, the Illinois Court of Appeals held that under the rationale of the statute the search of Raymond was reasonable. In the opinion the court stated:

"We feel that under the same rationale as set forth in the statute the police while engaged in the search had reasonable grounds to search Raymond Pugh as well. We agree with the State that the execution of search warrants in narcotics cases is a risky business at best, and unless the police search all persons present on the premises they endanger both themselves and the search they are making. Furthermore, the entry of the defendant onto premises where the police have reason to believe narcotics are concealed provides further grounds for his search. The United States Constitution prohibits unreasonable searches (US Const amend IV); the search of Raymond Pugh under the circumstances of this case cannot be so classified." (pp. 315, 316.)

In *People v. Harrison*, 83 Ill. App. 2d 90, 226 N. E. 2d 418, (1967), a search warrant was issued directing a narcotic search of the person of "James (Doe)" and the entire first floor of a certain building. Here again, the search warrant was issued upon a complaint relating the circumstances of a "purchase" by an informer. A co-defendant, Sarah Crawford, was found in the building when the officers executed the warrant. She was detained as she attempted to leave and found to have been carrying a bag of narcotics.

On appeal the court again rejected arguments similar to those advanced in *Pugh* and stated in the opinion:

"An officer in the execution of a search warrant 'may reasonably detain to search any person in the place at the time.' (c. 38, § 108-9.) Narcotics found on that person are properly received in evidence on a charge of unlawful possession of narcotic drugs. (*People v. Pugh,* 69 Ill. App. 2d 312, 217 N. E. 2d 557 [1966].) 'The mere possession of narcotic constitutes substantial evidence to sustain a finding that the possessor knew its nature.' (*People v. Pigrenent,* 26 Ill. 2d 224, 227, 186 N. E. 2d 306 (1962)." (pp. 96, 97.)

"Instruments, implements and apparatus" used in illegal gambling were the objects of a premises search of a gasoline service station in *People v. Kielczynski,* (Ill. App. 2d), 264 N. E. 2d 767 (1970). Defendant Kielczynski was not named in the warrant but was found on the premises. He was searched and slips of paper identified as records of horse race bets were found on his person. In upholding the trial court's refusal to suppress the evidence the court stated:

". . . We conclude that the search of defendant's person, who was on the premises described in the instant search warrant, was reasonable and necessary for the execution of the warrant. Therefore, the motion to suppress the evidence recovered from this search was properly denied." (p. 771.)

The state directs our attention to the rule that where a statute of one jurisdiction has been judicially construed before adoption, the Kansas courts will assume that the statute as judicially construed was adopted. This court has recognized and applied the rule on many occasions, recently in *Barr, Administratrix v. MacHarg, Administrator,* 203 Kan. 612, 455 P. 2d 516; *Woodring v. Hall,* 200 Kan. 597, 438 P. 2d 135; and *Republic Natural Gas Co. v. Axe,* 197 Kan. 91, 415 P. 2d 406. The rule is applicable in the instant case, and we are persuaded by the rationale of the Illinois Court in the cases mentioned. However, we are not content to rest our decision solely on this theory.

In the instant case the application and affidavit of Detective Arbogast recited the careful and exhaustive police work done before the issuance of a search warrant was sought. The application and attached affidavit fully established probable cause to believe that opium was concealed on the described premises, or on the persons of those present. Narcotics, such as heroin, are easily concealed on a person and may readily be disposed of. Where, as in this case, probable cause to believe that a drug is kept or concealed on certain described premises is established to the satisfaction of a proper magistrate, the search of a person found on the premises in the execution of a search warrant is not only reasonable, but necessary to secure effective enforcement of the Uniform Narcotic Drug Act.

We have examined the cases cited by defendant and find none that support a conclusion adverse to that which we have reached. Defendant places considerable emphasis on *Sibron v. New York,* 392 U. S. 40, 20 L. Ed. 2d 917, 88 S. Ct. 1889. *Sibron* dealt with a warrantless search situation under the New York "stop-and-frisk" statute. (N. Y. Anno. Code Crim. Proc. § 180-a). The case is not akin to the search warrant execution situation involved in the instant case. *Whiteley v. Warden,* 401 U. S. 560, 28 L. Ed. 2d 306, 91 S. Ct. 1031, held insufficient a complaint upon which an arrest warrant was issued. Other cases cited deal with probable cause requirements for the issuance of a search warrant. The defendant chal-

lenges only the execution of the search warrant under K. S. A. 1971 Supp. 22-2509, not the propriety of its issuance.

The judgment is affirmed.