THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* VENTURA E. YBARRA, Defendant-Appellant.

Second District   No. 76-483

Opinion filed February 9, 1978.—Rehearing denied April 7, 1978.

58

Ralph Ruebner and Alan D. Goldberg, both of State Appellate Defender's Office, of Elgin, for appellant.

Gene Armentrout, State's Attorney, of Geneva (Phyllis J. Perko, of Illinois State's Attorneys Association, of counsel), for the People.

Terry L. Fields, of Illinois State Police, of Springfield, for *amicus curiae* Illinois State Police.

Mr. JUSTICE GUILD delivered the opinion of the court:

Defendant Ventura E. Ybarra, in a bench trial, was found guilty of unlawful possession of a controlled substance and sentenced to two years probation under the condition that he continue with his treatment under the Drug Abuse Program. Pursuant to leave granted, the Illinois State Police, Department of Law Enforcement, has filed an amicus curiae brief herein.

The sole question presented is whether the search of the patrons of a bar was in violation of the Fourth Amendment.

On March 1, 1976, agents of the Illinois Bureau of Investigation, together with police officers from the city of Aurora, pursuant to a search warrant, went to the Aurora Tap seeking "evidence of the offense of possession of a controlled substance to be seized therefrom: heroin, contraband and other controlled substances, money, instrumentalities and narcotics, paraphernalia used in the manufacture processing and distribution of controlled substances." When the officers arrived at the Aurora Tap, described as a dismal, drab and shabby type establishment consisting of one room, there were 12 patrons present. The premises were searched, as well as the patrons. In the first patdown of the defendant at the bar a cigarette package with objects in it was felt by the officer. Within a few minutes the officer again searched the person of the defendant and found six tinfoil packs of heroin.

No objection is made to the warrant itself. The issue raised by the defendant is that, in the execution of such warrant, the persons in a public place such as this may not be searched. The defendant argues that the heroin found upon his person was the fruit of an illegal search since he

was not named in the warrant and was in a public place and, therefore, it was erroneously admitted into evidence. The motion to suppress this evidence was made prior to trial and denied. The authority for the search herein is found is section 108—9 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1975, ch. 38, par. 108—9), which reads as follows:

> "In the execution of the warrant the person executing the same may reasonably detain the search any person in the place at the time:
>
> (a) To protect himself from attack, or
>
> (b) To prevent the disposal or concealment of any instruments, articles or things particularly described in the warrant."

In substance, the defendant contends the provision of this statute providing that the person executing the warrant may search any person in the place at the time to prevent the disposal of articles or things described in the warrant is a violation of the Fourth Amendment. A similar statute is found in Arizona, Kansas, Georgia and the District of Columbia.

In support of his position, defendant has cited *United States v. Di Re* (1948), 332 U.S. 581, 587, 92 L. Ed. 210, 216, 68 S. Ct. 222, 225. We do not find that case applicable to the situation before us. The police officers in that case located, in an automobile, a party previously named by an informant, who allegedly had counterfeit gas coupons. The defendant Di Re was a passenger in the vehicle and was searched and convicted upon the evidence seized from his person. The court in *Di Re* held that the warrantless arrest and search of defendant's person when he had committed no offense and was merely present in the vehicle was not justified. This case, involving a warrantless search of an automobile passenger, has no real bearing upon the proper application of section 108—9, which deals only with situations involving warrants. Defendant also has cited *Stanford v. Texas* (1965), 379 U.S. 476, 13 L. Ed. 2d 431, 85 S. Ct. 506. In *Stanford* the court considered a "general warrant" which the federal courts have repeatedly held to be invalid under the Fourth Amendment. In *Stanford* the officers went to the defendant's residence and seized about half of all the books in his house and all of his personal papers, 14 cartons in all. The court held, and rightly so, that no official of the State shall ransack a person's house and seize his books and papers under the unbridled authority of a general warrant. That is not the situation in the case before us as the officers here were conducting a search in a small bar or saloon under a specific warrant for the discovery of heroin and allied paraphernalia.

The defendant has also cited *State v. Mendez* (1977), 115 Ariz. 367, 565 P.2d 873, which involved a statute virtually identical to ours. Defendant, who was not named in the search warrant, and not linked to the premises

being searched, entered while the search was in progress. The subsequent search of his person, which revealed heroin, was found to be unreasonable. Our case is different because defendant was present when the police first arrived and thus had an opportunity to acquire or conceal the contraband, which police were searching for, upon his person.

In further support of defendant's position, counsel has cited *Willis v. State* (1970), 122 Ga. App. 455, 177 S.E.2d 487, which involved a Georgia statute analogous to the Illinois statute. Defendant argues the Georgia courts do not allow the persons of those present to be searched, pursuant to a warrant for the premises, but that other facts and circumstances making it likely that the items are being concealed by them must be present to justify the search of their persons. In *Willis* the peace officers had a search warrant for an apartment and, in executing the same, the court held that any person present who might reasonably be involved in the crime of possession of illegal drugs was the proper subject of the execution of the warrant. The court observed that the drugs were pills in a small container which might easily be passed from person to person. The court there stated, "we hold the search not unreasonable under Fourth Amendment standards, and authorized by the terms of the warrant." (122 Ga. App. 458-59, 177 S.E.2d 487, 489.) The court's further general observation was that such a warrant would not authorize the search of someone in another part of the house; or the search of a person entering the premises such as a postman; or the search where there was no reason to believe the house was being frequented by persons illegally purchasing drugs. The latter is particularly interesting because in the complaint for the search warrant before us the allegation was made that the bar was frequented by persons illegally purchasing drugs. We find *Willis* is actually supportive of the search of the defendant herein.

In this connection the observations of the Supreme Court of Washington, in *Olympia v. Culp* (1925), 136 Wash. 374, 377, 240 P. 360, 361-62, are pertinent.

"Officers making a search of premises under a search warrant may lawfully detain all persons found therein until the search is concluded. Any other rule would frustrate the purposes of the search; the officers would be compelled to stand idly by while the articles for which the search was instituted were carried away. The law is not so impotent as this. The officers may, under a warrant to search the premises, lawfully search any one found therein whom they have reasonable cause to believe has the articles for which the search is instituted upon his person."

Defendant further relies on the recent case of *People v. Dukes* (1977), 48 Ill. App. 3d 237, 363 N.E.2d 62. In that case, the police officers were executing a search warrant of premises located on the south side of

Chicago when the defendant knocked at the door and entered the apartment. An officer noticed a bulge under the defendant's coat and he was thereupon searched. That search disclosed a gun. The substance of the *Dukes* case is summed up in the court's statement that interpretation of section 108—9 of the Code of Criminal Procedure:

> "* * * in a manner permitting police officers to search anybody who happens upon premises described in the warrant during the execution of the warrant, would be to give the statute an unacceptably overbroad interpretation." (48 Ill. App. 3d 237, 241, 363 N.E.2d 62, 64.)

The court found that section 108—9 of the Code of Criminal Procedure did not authorize the search of persons,

> "* * * on the premises described in the warrant without some showing of a connection with those premises, that the police officer reasonably suspected an attack, or that the person searched would destroy or conceal items described in the warrant." (48 Ill. App. 3d 237, 241, 363 N.E.2d 62, 64.)

The latter phrase is controlling in the case before us. There is no doubt that the six packets of heroin herein could easily be concealed by the defendant and thus thwart the purpose of the warrant authorizing the search for heroin in the premises in question, nor do we find that the defendant was an "innocent stranger(s) having no connection with the premises" as stated in *Dukes*.

Examination of *People v. Pugh* (1966), 69 Ill. 2d 312, 217 N.E.2d 557, discloses a case quite similar to *Dukes*. In *Dukes*, of course, the officers were conducting a search or executing a search warrant for the discovery of gambling paraphernalia while in *Pugh* the subject of the search under the warrant was for narcotics. Probably the distinguishing feature between *Pugh* and *Dukes* is that Dukes, in entering the gambling premises, was merely a visitor, while in *Pugh* the warrant was being executed on the premises and the person of Jessie Pugh when Raymond Pugh entered. While the case does not state that Raymond Pugh was a resident of the premises, the sole issue raised in the case by Raymond Pugh was as to the search of his person. In that respect the appellate court stated, in interpreting section 108—9 of the Code of Criminal Procedure:

> "We agree with the State that the execution of search warrants in narcotics cases is a risky business at best, and unless the police search all the persons present on the premises they endanger both themselves and the search they are making. Furthermore, the entry of the defendant onto the premises where the police have reason to believe narcotics are concealed provides further grounds for his search. The United States Constitution prohibits unreasonable searches (U.S. Const. amend. IV); the search of Raymond Pugh

under the circumstances of this case cannot be so classified." 69 Ill. App. 2d 312, 316, 217 N.E.2d 557, 559.

In this connection the comments of Illinois Revision Committee are pertinent, *viz.*,

"In addition, it is clear that the purpose of the warrant would be thwarted were not the officer given the second power found in subsection (b), *i.e.* to search the person for the things to be seized. The need for this power arises most often in the narcotics cases where disposition is most easily effected.

\* \* \*

The committee felt that this section is necessary because it gives the officer a clear outline of his power in executing the warrant and removes doubt from a rather cloudy area of the law." Ill. Ann. Stat., ch. 38, par. 108—9, Committee Comments, at 271 (Smith-Hurd 1970).

We reiterate that each case must be decided upon the facts found therein. Such a warrant obviously would not authorize a "blanket search" of persons or patrons found in a large retail or commercial establishment. But in the case before us the search was conducted in a one-room bar where it is obvious from the complaint of the officer seeking the search warrant that heroin was being sold or dispensed.

In *People v. Kielczynski* (1970), 130 Ill. App. 2d 231, 264 N.E.2d 767, we find again a case of a search warrant being issued for the search of the premises only for gambling equipment. Kielczynski owned the premises which was a gas station and in the execution of the search warrant the defendant's person was searched. Defendant's contention was that the trial court erred in denying his motion to quash the warrant and suppress the evidence. The appellate court, in considering section 108—9 of the Code of Criminal Procedure found that searches of persons on the premises have been found to be reasonable, citing *People v. Harrison* (1967), 83 Ill. App. 2d 90, 226 N.E.2d 418, and *People v. Pugh*. The court stated,

"We conclude that the search of defendant's person, who was on the premises described in the instant search warrant, was reasonable and necessary for the execution of the warrant." 130 Ill. App. 2d 231, 238, 264 N.E.2d 767, 771.

The Supreme Court of Kansas, in *Kansas v. Loudermilk* (1972), 208 Kan. 893, 494 P.2d 1174, considered the statute of Kansas which was adopted from section 108—9 of the Illinois Code of Criminal Procedure verbatim, except for the deletion of the words "any instruments, articles or" found in section (b) of the Illinois statute. In the execution of a warrant, three parties were present and Loudermilk, the defendant, was searched. In the wallet of Loudermilk heroin was found. The Kansas

Supreme Court found that in the execution of a search warrant under the Kansas statute the reasonable detention and search of a person found on the premises does not offend against the Fourth Amendment. The court further found that the Fourth Amendment prohibits only unreasonable searches and seizures and that the search conducted in *Loudermilk* was not unreasonable. The court further found that the case of *Sibron v. New York* (1968), 392 U.S. 40, 20 L. Ed. 2d 917, 88 S. Ct. 1889 (also cited by the defendant herein), dealing with a warrantless search was not applicable to the search warrant execution situation before it. The court in *Loudermilk* concluded:

"Where, as in this case, probable cause to believe that a drug is kept or concealed on certain described premises is established to the satisfaction of a proper magistrate, the search of a person found on the premises in the execution of a search warrant is not only reasonable, but necessary to secure effective enforcement of the Uniform Narcotic Drug Act." (208 Kan. 893, 898, 494 P.2d 1174, 1178.)

See also *Kansas v. McClelland* (1974), 215 Kan. 81, 523 P.2d 357.

Probably the most closely akin case to the one before us is found in *United States v. Graves* (D.C. App. 1974), 315 A.2d 559. The District of Columbia code is most similar to section 108—9 of the Illinois Code of Criminal Procedure, reading, that an officer executing a warrant for the search of premises, or a vehicle, may search any person therein,

"* * * to the extent reasonably necessary to find property enumerated in the warrant which may be concealed upon the person * * *." (315 A.2d 559, 560.)

In *Graves* the warrant was for the search of a delicatessen, seeking gambling paraphernalia. In the execution of the warrant there were five or six persons in the delicatessen. The patrons were searched and gambling paraphernalia was found on the person of the defendants Graves and Goldston. The court there relied upon the prior decision of the District of Columbia Court of Appeals in *United States v. Miller* (D.C. App. 1972), 298 A.2d 34, and held:

"* * * the officers had sufficient grounds to search the few individuals present when the warrant was executed." (315 A.2d 559, 561.)

The District of Columbia Court of Appeals noted that such a warrant would not "authorize the search of a large number of persons present in a supermarket or other such store when there was no reason to link them to the objects of the search." (315 A.2d 559, 561.) On the evidence before it, the court found:

"We do not believe on these facts that a suspect should be allowed to circumvent a warrant to search premises by the simple device of

picking up the illegal object and holding it in his hand or placing it in his sock." (315 A.2d 559, 561.)

The court concluded the officers acted reasonably in searching the five or six patrons who were found in the delicatessen.

In summation, we do not find section 108—9 of the Illinois Code of Criminal Procedure to be unconstitutional in its application to the facts before us. We therefore affirm the judgment of the conviction of the defendant herein.

Affirmed.

WOODWARD and RECHENMACHER, JJ., concur.