THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WILLIE BOYKIN, Defendant-Appellant.

Third District No. 77-330

Opinion filed October 20, 1978.—Modified on denial of rehearing December 6, 1978.

Robert Agostinelli and Mark Burkhalter, both of State Appellate Defender's Office, of Ottawa, for appellant.

Edward Petka, State's Attorney, of Joliet (James E. Hinterlong and Gerry R. Arnold, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

Defendant Willie Boykin appeals from a conviction of unlawful possession of a controlled substance (heroin) following a bench trial in the circuit court of Will County. Conviction was pursuant to section 402 of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1977, ch. 56½, par. 1402(b)). Defendant was sentenced to a term of two and a half to eight years in the penitentiary for possession of 3 grams of heroin found on his person during the execution of a search warrant for certain premises in which he was present.

On appeal, the defendant argues that the heroin should have been suppressed at the trial (1) because the search warrant for the premises was not executed in a reasonable manner, and (2) because the search of the defendant was made after an illegal arrest. An additional issue was raised with respect to the discretionary action of the trial court in refusing to allow discovery of certain police reports containing information about the premises involved.

It is noted from the record that members of the Metropolitan Area Narcotics Squad had obtained a search warrant for the residence of one Thomas Fant in Joliet. The warrant authorized the officers to enter the house for the purpose of searching for heroin in the home or on the person of Thomas Fant. Defendant Willie Boykin was not named in the warrant nor was he known to be in the residence. The agents arrived at the residence around 11:30 p.m. on the night of October 19, 1976, and stationed themselves at both the front and rear entrances. Lights were on in the house and on the front porch but no windows or doors were open.

Two agents proceeded to the front porch, and past two dogs tied to the railing, and stopped in front of the closed front door. As an agent in the front yard announced over a bullhorn, "Police officers, we have a search warrant for the residence," one of the officers on the porch knocked on the front door. There was no response from within to the first knock nor to a second knock by the officer. Officers testified that they then heard a scuffling noise from within, like feet moving quickly. Upon hearing this scuffling noise, the officers forcibly entered the residence, knocking the front door in.

As the officers entered the residence, they saw the defendant Boykin and Fant running away from them towards the kitchen. Shouts of "Halt! Police!" proved futile and the agents quickly apprehended the two men while other agents entered by way of the rear entrance. The defendant was handcuffed and patted down superficially for weapons. A short time later, after several other persons within the residence had been immobilized, the officers returned to conduct a more thorough search of the defendant. This search produced a tinfoil packet of heroin from the defendant's shirt pocket. The officers then arrested the defendant and read him his rights under the United States and Illinois constitutions. The defendant said he had gotten the heroin from Fant earlier in the evening.

On the motion to suppress, the defendant contends that the agents had violated the "knock and announce" rule by forcibly entering the residence before giving the occupants a chance to respond to their announcement. The defense also argued that the officers, once inside the premises, lacked the authority to search the defendant's person. The trial court denied the suppression motion and found that exigent circumstances justified the forcible entry into the premises and that the subsequent searches were authorized by sections 108—8 and 108—9 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1977, ch. 38, pars. 108—8, 108—9). At the close of the bench trial, the trial court entered a judgment finding defendant guilty.

As we have noted, the first issue raised to challenge the search of defendant Boykin focuses upon the reasonableness of the officers' forcible entry into the premises. The defense argues that, because the officers failed to give the occupant a chance to respond to their announcement of purpose, the warrant was unreasonably executed and the fruits of the subsequent searches must be suppressed. The United States Supreme Court recognized in *Ker v. California* (1963), 374 U.S. 23, 10 L. Ed. 2d 726, 83 S. Ct. 1623, that unreasonableness in the manner of executing a search warrant may require the suppression of evidence obtained therefrom. The court in the *Ker* case also recognized that the question of reasonableness depends on the facts and circumstances of each individual case. 374 U.S. 23, 33, 10 L. Ed. 2d 726, 737, 83 S. Ct. 1623.

■■ Generally, absent exigent circumstances, when officers are executing

a search warrant, they are expected to announce their authority and purpose prior to entering the premises to be searched. Implied in this general rule is the assumption that a person within be given time to respond. This is based on the principle that any other rule would denigrate the important privacy interests that the fourth amendment protects. It is noted, however, that the "knock and announce" rule is not constitutionally mandated (*People v. Wolgemuth* (1977), 69 Ill. 2d 154, 370 N.E.2d 1067) nor is it required by statute in Illinois. It has also long been recognized that the presence of exigent circumstances may relieve police officers of the knock and announce requirement. (*People v. Britz* (3d Dist. 1976), 39 Ill. App. 3d 200, 349 N.E.2d 418; *People v. Jackson* (4th Dist. 1976), 37 Ill. App. 3d 279, 345 N.E.2d 509.) Clearly, the presence of exigent circumstances is as important and relevant to the question of the amount of time an officer ought to wait prior to entering forcibly as it is to the question of whether he needs to even announce his authority and purpose prior to the entry.

■■ The drug agents had obtained a warrant, in the instant case, to search for heroin at the residence of Thomas Fant. They arrived at the house at 11:30 p.m. and found the lights on inside, the doors and windows closed, and two dogs on the lit-up front porch. An announcement identifying themselves and their purpose at the premises was made by police over a portable amplifier. In addition, an agent on the front porch knocked twice on the closed front door. There was no response from within the house to either the announcement or the knocks. A period of time, perhaps as long as 10 seconds, elapsed between the final knock and the forcible entry by the agents through the front door. Prior to such entry, the agents had received no response from within, and, in addition to this lack of response, they heard scuffling noises which sounded as if persons within were scurrying around. Under these circumstances, it is reasonable to conclude that persons within may either be attempting to arm themselves or attempting to destroy incriminating evidence. In either event, a matter of a few seconds could be critical. Under the exigencies of the moment, the police conduct was justified. We conclude that the entry in this case was reasonable. We observe that no rigid rule, establishing what is a reasonable amount of time for officers to wait after announcing their presence and purpose, is applicable. Ten seconds could be an insufficient period of time in some circumstances, but under the facts as presented in this cause, given the purpose for which the warrant was issued, the lack of response to an announcement and the knocks on the door, together with the suspicious sounds within, justified the entry as a reasonable entry.

An issue is also raised by the defendant concerning the reasonableness of the search of the defendant after the officers had gained entry to the premises. The officers saw the defendant attempting to run toward the kitchen. He failed to respond to their commands to halt and was then

apprehended. After he was handcuffed and given a superficial pat-down for weapons, the officers apparently focused their attention on immobilizing other persons present on the premises. When that had been accomplished, they returned and conducted a more thorough search of the defendant. That search turned up the packets of tinfoil containing heroin. The defendant was then read his constitutional rights and arrested. The defense argues that the handcuffing of defendant constituted an unlawful arrest since there was no probable cause to believe defendant had committed a crime at the time he was handcuffed and that the further search of defendant was not authorized by section 108—9 since the arrest had already been made.

■■ The trial court agreed with the State that justification for the initial detention and the subsequent search could be found in section 108—9 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1977, ch. 38, par. 108—9) which provides:

> "In the execution of the warrant the person executing the same may reasonably detain to search any person in the place at the time:
>
> (a) To protect himself from attack, or
>
> (b) To prevent the disposal or concealment of any instruments, articles or things particularly described in the warrant."

The relevant standard to be applied is reasonableness which cannot, as noted, be fixed by set rules. (*People v. Ybarra* (2d Dist. 1978), 58 Ill. App. 3d 57, 373 N.E.2d 1013.) In the instant case, the officers had just entered the premises for which a search warrant for heroin had been issued. They saw two men running from them and there were other persons in the house as well. They apprehended the defendant, one of those seen running, handcuffed him, and searched him superficially for weapons. They returned shortly, after immobilizing the other persons present, to conduct a complete search of the defendant's person. Such conduct, under the circumstances was reasonable and comports fully with the requirements of section 108—9 of the Code of Criminal Procedure. The detention preliminary to the search was reasonable in light of the attempt to flee and the searches were made for purposes expressly stated in the statute. (See *People v. Ybarra* (2d Dist. 1978), 58 Ill. App. 3d 57, 373 N.E.2d 1013.) Even without exigent circumstances of a nature found in the instant case, the court in *Ybarra* upheld as reasonable similar searches. In *Ybarra*, the officers entered a tavern, pursuant to a search warrant for heroin, and found 12 patrons inside. They searched the premises and all persons therein. After an initial pat-down search of the defendant which turned up nothing, the officers searched him again, a few minutes later, and found heroin on his person. The court, after an examination of Illinois and out-of-State precedents, concluded that the actions of the police were

permissible under the authority of section 108—9. In the instant case, the circumstances present are far more compelling in their support of a finding of reasonableness than the circumstances in the *Ybarra* case.

■ We recognize that section 108—9 cannot be read to authorize a routine search of anyone who happens to be on the premises, regardless of circumstances (*People v. Ybarra*, 58 Ill. App. 3d 57, 62; *People v. Dukes* (1st Dist. 1977), 48 Ill. App. 3d 237, 363 N.E.2d 62). This section does authorize searches where it is shown that the person searched had some "connection with those premises, that the police officer reasonably suspected an attack, or that the person searched would destroy or conceal items described in the warrant." (*People v. Dukes*, 48 Ill. App. 3d 237, 241.) In *Dukes*, the court required "some showing in the record" that the officers involved had reasonable grounds to believe that the person might attack or might destroy or conceal evidence. In the instant case, noting the events which took place, and immediately after the police entry (including particularly the defendant's action in fleeing), makes a sufficient showing in the record.

■ The defense argues that section 108—9 cannot be used to justify the search of defendant after his preliminary immobilization. Defendant claims, he was under arrest at the time he was handcuffed, and he, therefore, asserts that section 108—9 does not apply. We have noted heretofore that the police had reasonable cause for the detention and the search under section 108—9. Action was taken, clearly, to immobilize defendant who had attempted to flee from the officers. The prosecution contends that only after the search had turned up the heroin package, did the police evidence an intent to arrest and acted accordingly.

We believe, however, that it is unnecessary for us to determine whether or not defendant was under arrest when he was handcuffed, or, later, when the police announced that he was under arrest. The search was clearly sanctioned in either situation under section 108—9. The legislature showed by the enactment of section 108—9 that where probable cause had been found to search a place, every individual in that place could be subject to a reasonable detention and a search for the protection of the officers executing the warrant, and, also, for preservation of evidence which the warrant authorizes, which may be seized pursuant to the warrant. As the prosecution contends, it would be, indeed, an anomalous situation if the owner of a house which is the object of a search warrant could avoid detection of drugs or other contraband or evidence, which is noted in the search warrant, merely by secreting it or passing the material to a visitor the police would be forbidden to search. Under the facts shown in the instant case, handcuffing a defendant was a reasonable detention within the meaning of section 108—9, and his search was clearly sanctioned by that provision. As we have noted, under the circumstances in this case, it was immaterial whether defendant was arrested at the time

he was handcuffed or at the time the officers announced his arrest following the search in which they found heroin on his person.

Defendant contends that if section 108—9 would sanction search of defendant, the Act would be unlawful and violative of the fourth amendment to the Constitution of the United States. This contention is predicated upon a contention that there was a lack of probable cause in the instant case. The contention of the defendant that the police lacked probable cause to make the search of the defendant after he was immobilized is not supported by the factual circumstances which we have recited. As noted, the police had a search warrant for drugs on the premises, a circumstance which justified the forcible entry into the premises and search of persons there, under section 108—9. Here, also, defendant attempted to flee. Those circumstances, therefore, justified the detention and subsequent search of defendant under section 108—9. See also *People v. Ybarra* (2d Dist. 1978), 58 Ill. App. 3d 57, 373 N.E.2d 1013. ■■ The final issue raised by the defendant concerns the trial court's discretionary refusal to order disclosure of certain police reports which the defendant hoped would aid in arguing the legality of the search. Supreme Court Rule 412(h) (Ill. Rev. Stat. 1977, ch. 110A, par. 412(h)) states:

> "Upon a showing of materiality to the preparation of the defense, and if the request is reasonable, the court in its discretion may require disclosure to defense counsel of relevant material and information not covered by this rule."

The defendant argues that the reports sought might be relevant to the issue of whether the Fant residence described in the warrant had a reputation as a distribution center for narcotics. While that may be so, the reputation of the residents in that respect is not relevant to the question of whether defendant was guilty of possessing heroin. Neither, as is evident from our discussion of the legality of the searches of the defendant, does the reputation of the residence have any bearing, in this case, on the legality of the search. There was, therefore no abuse of discretion on the part of the trial court in refusing to order disclosure of the police reports, and, notably, also for the reason that no showing that prejudice would result from the failure to disclose the reports requested.

For the reasons stated, therefore, the judgment and sentence of the Circuit Court of Will County is affirmed.

Affirmed.

STOUDER and STENGEL, JJ., concur.