THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LORNA CAMPBELL, Defendant-Appellant.

Third District    No. 78-59

Opinion filed January 10, 1979.

Robert Agostinelli and Frank W. Ralph, both of State Appellate Defender's Office, of Ottawa, for appellant.

Edward Petka, State's Attorney, of Joliet (James E. Hinterlong and Gerry R. Arnold, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE STENGEL delivered the opinion of the court:

Defendant was charged by information in the Circuit Court of Will County with unlawful possession of a controlled substance (LSD). Also charged in the same information were George Wolff, who was tried together with defendant, and Steven Bean, who entered a plea of guilty. Prior to trial defendant filed a motion to suppress evidence which she claimed was illegally seized from her purse. The motion was denied and the evidence admitted at trial where the jury found defendant guilty. She was sentenced to two years probation.

At approximately 10 p.m. on September 13, 1976, five officers of the Metropolitan Area Narcotics Squad, armed with a search warrant for the apartment of George Wolff, went to a building in Bolingbrook where Wolff resided with defendant. With the officers was Steven Bean, a friend

of Wolff, who had agreed to purchase LSD for one of the agents from Wolff. Bean entered Wolff's apartment with $1,000 he had received from the agent and came back out about five minutes later with 1,000 orange tablets. Bean was immediately arrested. The officers then knocked on the door of Wolff's apartment, twice announcing that they were police officers and had a search warrant. Upon hearing furtive sounds from within, the agents forced open the door and entered the apartment where they found and arrested Wolff and another man. In searching the apartment the officers recovered a number of large bags of orange and pink pills, later determined to be LSD.

During the course of the search defendant, accompanied by another woman, opened the apartment door without knocking and entered the residence. One of the agents saw defendant and yelled, "That's Lorna, grab her." Defendant and her friend were detained in the living room while one of the officers searched their purses. In defendant's purse the agent found the 25 pink pills which were the subject of defendant's motion to suppress.

The trial court upheld the search of defendant's purse on the basis of section 108—9 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1975, ch. 38, par. 108—9), which provides:

> "*Detention and Search of Persons on Premises.*) In the execution of the warrant the person executing the same may reasonably detain to search any person in the place at the time:
> (a) To protect himself from attack, or
> (b) To prevent the disposal or concealment of any instruments, articles or things particularly described in the warrant." Ill. Rev. Stat. 1975, ch. 38, par. 108—9.

The defendant contends that the search in this case is a violation of the Fourth Amendment. Does the officer's right to detain and search any person on the premises at the time of execution of the warrant extend to persons who enter the premises during the course of the search?

This precise question was answered in *People v. Pugh* (1st Dist. 1966), 69 Ill. App. 2d 312, 217 N.E.2d 557, *appeal denied* (1966), 33 Ill. 2d 628, a case strikingly similar to the one at bar. In *Pugh* police had a warrant to search the apartment of Jessie Pugh for narcotics. While the search was being conducted Raymond Pugh, Jessie's brother, rang the doorbell and was admitted to the apartment. Raymond was not named in the warrant, and there is nothing in the opinion to suggest the officers conducting the search had any prior knowledge of Raymond's involvement with narcotics. Nevertheless, the officers searched Raymond Pugh and found 42 foil packages of heroin in his pants pocket. Raymond was charged with possession, and he moved to suppress the evidence. The motion was denied and Raymond was convicted.

On appeal the sole issue raised in the case by Raymond Pugh was as to the search of his person. In that respect the court stated, in interpreting section 108—9 of the Code of Criminal Procedure:

"We agree with the State that the execution of search warrants in narcotics cases is a risky business at best, and unless the police search all the persons present on the premises they endanger both themselves and the search they are making. Furthermore, the entry of the defendant onto the premises where the police have reason to believe narcotics are concealed provides further grounds for his search. The United States Constitution prohibits unreasonable searches (U.S. Const. amend. IV); the search of Raymond Pugh under the circumstances of this case cannot be so classified." (69 Ill. App. 2d 312, 316, 217 N.E.2d 557, 559.)

In this connection the comments of Illinois Revision Committee are pertinent, *viz.*,

"In addition, it is clear that the purpose of the warrant would be thwarted were not the officer given the second power found in subsection (b), *i.e.* to search the person for the things to be seized. The need for this power arises most often in the narcotics cases where disposition is most easily effected.

❊ ❊ ❊

The committee felt that this section is necessary because it gives the officer a clear outline of his power in executing the warrant and removes doubt from a rather cloudy area of the law." Ill. Ann. Stat., ch. 38, par. 108—9, Committee Comments, at 271 (Smith Hurd 1970).

Defendant Campbell recognizes the indistinguishable nature of the *Pugh* decision, but argues that it is no longer good law in light of *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868, which was decided two years after *Pugh*. Defendant claims the scope of a search under section 108—9 must now be limited to the cursory pat down for self protection contemplated by the court in *Terry*. It is argued that the search of defendant's purse in the instant case exceeded the scope permissible under section 108—9. We do not agree.

The permissible scope of a search is to be determined by the purposes which justified its inception. (*Terry; Warden v. Hayden* (1967), 387 U.S. 294, 18 L. Ed. 2d 782, 87 S. Ct. 1642.) In *Terry* the Supreme Court expressly declined to enunciate specific limits on the scope of a search in a "stop and frisk" situation, but did state:

"Suffice it to note that such a search, unlike a search without a warrant incident to a lawful arrest, is not justified by any need to prevent the disappearance or destruction of evidence of crime. See *Preston v. United States,* 376 U.S. 364, 367, 18 L. Ed. 2d 777, 84 S.

Ct. 881, 883, (1964). The sole justification of the search in the present situation is the protection of the police officer and others nearby, and it must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." (*Terry*, 392 U.S. 1, 29, 20 L. Ed. 2d 889, 911, 88 S. Ct. 1868, 1884.)

The court went on to conclude that a pat down search of the outer clothing of a suspect was proper, given the limited justification for the search.

■■ ■ The justification for a search under section 108—9 is not limited solely to the protection of the police officer. On the contrary, a section 108—9 search is, like a search incident to arrest, justified both by the need of the officer to protect himself and the need to prevent the disappearance or destruction of evidence of a crime. (Ill. Rev. Stat. 1975, ch. 38, par. 108—9. See Ill. Rev. Stat. 1977, ch. 38, par. 108—1; *Preston v. United States* (1964), 376 U.S. 364, 11 L. Ed. 2d 777, 84 S. Ct. 881; *Chimel v. California* (1969), 395 U.S. 752, 23 L. Ed. 2d 685, 89 S. Ct. 2034.) Thus a search under section 108—9 is more akin to a search incident to arrest than it is to a *Terry* "stop and frisk," and any limitations on the scope of a section 108—9 search should be analogous to those governing a search incident to arrest. In making an arrest an officer is justified in searching "the arrestee's person and the area 'within his immediate control'— construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." (*Chimel*, 395 U.S. 752, 763, 23 L. Ed. 2d 685, 694, 89 S. Ct. 2034, 2040.) Defendant's purse was unquestionably within such an area. She might have easily seized a weapon or destructible evidence from it. We believe the *Pugh* case is still sound law and that the scope of a search under section 108—9 has not been limited in any way by the *Terry* decision. We also note that *Pugh* has been cited approvingly in at least three other post-*Terry* decisions. *People v. One 1968 Cadillac* (2d Dist. 1972), 4 Ill. App. 3d 780, 281 N.E.2d 776; *People v. Kielczynski* (1st Dist. 1970), 130 Ill. App. 231, 264 N.E.2d 767; and *People v. Ybarra* (2d Dist. 1978), 58 Ill. App. 3d 57, 373 N.E.2d 1013.

Defendant, however, relies upon *People v. Dukes* (1st Dist. 1977), 48 Ill. App. 3d 237, 363 N.E.2d 62, and argues that *Dukes*, rather than *Pugh* should control the instant case. *Dukes* is similar to the case at bar, involving the search of a person who entered an apartment while it was being searched pursuant to a warrant. When the defendant in *Dukes* knocked at the door and entered the apartment, an officer noticed a bulge under the defendant's coat, and the search which followed disclosed a gun. The court there held that the search of the defendant could not be justified under section 108—9. The substance of the *Dukes* case is

summed up in the court's statement that interpretation of section 108—9 of the Code of Criminal Procedure:

"\* \* \* in a manner permitting police officers to search anybody who happens upon premises described in the warrant during the execution of the warrant, would be to give the statute an unacceptably overbroad interpretation." (48 Ill. App. 3d 237, 241, 363 N.E.2d 62, 64.)

The court found that section 108—9 of the Code of Criminal Procedure did not authorize the search of persons,

"\* \* \* on the premises described in the warrant without some showing of a connection with those premises, that the police officer reasonably suspected an attack, or that the person searched would destroy or conceal items described in the warrant." (48 Ill. App. 3d 237, 241, 363 N.E.2d 62, 64.)

The latter language is pertinent to the case before us because in *Dukes* they found "no facts indicating that the defendant had any connection with the premises," while here defendant was actually a resident of the apartment described in the warrant. Although it is unclear from the record whether the officers conducting the search were aware of this fact at the time, it is clear that the officers had some prior knowledge of the defendant. As soon as she entered the apartment one of the officers identified her by name and advised his fellow officers to "Grab her." Moreover defendant opened the door and entered the apartment without knocking or announcing her presence. This fact alone would indicate to the officers that defendant was more than a mere passerby who had no connection with the premises.

We think *Dukes* is distinguishable for several other reasons as well. First, in *Dukes* the officers were conducting a search for gambling paraphernalia and not a search for narcotics which can more easily be concealed or destroyed. (See *Pugh*.) Furthermore, in *Dukes* the officer "unequivocally testified" that he had no reason to believe the defendant was dangerous. In the instant case, on the other hand, the officer stated that two reasons he searched the defendant's purse were to maintain his own safety and to make sure that none of the fruits of the search would get away. In explaining his apprehension the officer testified, "I don't know what—she could have had anything in her purse. She could have had a gun."

Both *Pugh* and *Dukes* are discussed in *People v. Ybarra* (2d Dist. 1978), 58 Ill. App. 3d 57, 373 N.E.2d 1013, and sound reasoning is used in distinguishing the two cases.

Ultimately, each search must be judged by a test of reasonableness. (*People v. Watkins* (1960), 19 Ill. 2d 11, 166 N.E.2d 433.) The essential

question is whether the circumstances confronting the officer at the time of the search were such as to warrant a man of reasonable caution to believe the action taken was appropriate. (*People v. Bohannon* (1st Dist. 1976), 38 Ill. App. 3d 489, 348 N.E.2d 249.) The officers in the present case were engaged in the "risky business" of executing a search warrant for narcotics. They had already discovered a large quantity of illicit drugs in the apartment. Suddenly the defendant, with whom the officers were previously familiar, entered the room. She entered without knocking or otherwise announcing her presence. In an effort to preserve their own safety and the fruits of the search the officers searched defendant's purse. We cannot say this action taken by the officers was unreasonable in light of the circumstances confronting them at the time.

The judgment of the Circuit Court of Will County is affirmed.

Affirmed.

ALLOY and SCOTT, JJ., concur.