THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JOHNNY R. WILSON, Defendant-Appellant.

Fourth District   No. 13095

Opinion filed May 23, 1977.

CRAVEN, P. J., dissenting.

Richard J. Wilson and Daniel D. Yuhas, both of State Appellate Defender's Office, of Springfield, for appellant.

No appearance for the People.

Mr. JUSTICE TRAPP delivered the opinion of the court:

Defendant appeals his conviction of burglary entered upon a jury verdict. Sentence of not less than two nor more than six years was imposed.

Upon appeal defendant contends that he was not proven guilty beyond a reasonable doubt, that he was deprived of full assistance of counsel by reason of the fact that during the course of the trial appointed counsel represented two co-defendants, that the trial court restricted defendant's

cross-examination of a key prosecution witness and that defendant's "constitutional right against twice being placed in jeopardy was violated where prosecutory negligence required defendant's counsel to seek a mistrial during a former prosecution."

This trial was upon an indictment charging defendant, Kenneth Echols and William Echols. Two others, Ferguson and Van Cook, were charged in the same indictment but upon the motion of the public defender the trials of Ferguson and Van Cook were severed for the reason that each had made statements to the police which implicated the remaining defendants.

Upon arraignment defendant initially advised the court that he would have private counsel. The public defender was appointed for the remaining defendants. Some two weeks later defendant filed an affidavit of indigency and the public defender was appointed to represent him.

At 5 a.m. on June 5, 1974, Julian and Galen Beckler, who were going to clean up a tavern, observed men at the drive-up window of the tavern and one or more other men inside. They appeared to be passing something out of the window. The Becklers notified the police and while waiting observed the men leaving in a car which they described and for which they obtained a license number. They described the dress of two of the men but could not otherwise identify them than by a general description. The police broadcast the description and license number of the automobile and shortly thereafter it was located, together with the five men charged. The automobile belonged to the defendant. A tape player was found in the trunk and identified by the owner of the tavern as being taken.

After the commencement of this trial, Ferguson with his separately appointed counsel and the defendant represented by the public defender, appeared in open court and upon motion of the State's Attorney Ferguson was granted immunity from prosecution.

He thereafter testified that he had been with defendant most of the day preceding the burglary, had travelled to Decatur with defendant in the latter's car. He testified that on the early morning of June 5, the witness, together with the two Echols and Van Cook, were riding around the city of Decatur with defendant who was driving his car. He stated that they passed the tavern and upon a remark made by one of those present in the car defendant made a U-turn and drove into the tavern lot. Defendant and each of the Echols got out and went to the back door of the building which they tried to open. The witness, who did not wish to be at the scene, moved into the driver's seat and drove off with Van Cook. He went to a nearby intersection, turned around and came back where the defendant and the Echols ran up to meet the car on the street in front of the tavern. He testified that the men were at the tavern for something

over a minute and one-half. They drove off and within a short time were arrested by the police. This witness testified that he did not observe the tape player being placed in the trunk.

Police investigation disclosed that the drive-up window was broken and latent fingerprints were found. A qualified fingerprint expert identified the latent fingerprints as being identical to those on the fingerprint card of Kenneth Echols. Relevant to an issue raised on appeal is that Officer Madia, who obtained the fingerprint cards, identified defendant in open court as the individual whose prints appeared on the card bearing the name of Kenneth Echols.

Upon the last event, outside of the presence of the jury, the State's Attorney moved that the prints of defendant and Kenneth Echols be taken. Defendant's counsel's objections were sustained. The respective defendants, in open court, each claimed privilege against self-incrimination in the taking of further fingerprints. Subsequently, and again outside the presence of the jury, the State's Attorney moved to recall Officer Madia for the purpose of describing the clothing of the man whose fingerprints were on the card bearing the name of Kenneth Echols. Defense counsel objected stating, "I think the People are stuck with the mistake. * * * It is their problem." The court sustained the objection but denied counsel's motion to strike all testimony concerning the fingerprints for want of foundation.

■■ The record does not disclose that defendant's representation was inhibited by reason of the fact that counsel represented two co-defendants also on trial. No defendant testified and there were no inconsistent defenses which counsel was required to support. *People v. Smith* (1974), 19 Ill. App. 3d 138, 310 N.E.2d 818.

■■ Specific argument that counsel was compelled to defend upon a theory that a burglary had not been committed, whereas personal counsel could insist that defendant was not involved or present is not supported by the evidence. The testimony of the accomplice, Ferguson, is corroborated by the testimony identifying defendant's automobile at the site of the burglary and the almost immediate arrest of defendant in that vehicle with the other men charged.

■■ The further specific argument that counsel could not effectively represent both defendant and Kenneth Echols in arguing the confusion upon the fingerprint identification is not persuasive. The objection to the further fingerprinting of defendant to the recall of Madia made the evidentiary confusion permanent. It would have been doubtful wisdom for counsel personal to defendant to have done other than object to the prosecution's effort to correct the "mistake" appearing in the record. Finally, the fingerprint evidence was not required to place defendant at the scene at the time concerned.

Defendant cites *Glasser v. United States* (1941), 315 U.S. 60, 86 L. Ed. 680, 62 S. Ct. 457, as authority upon the conflicting obligations of counsel in representing two defendants. That was a conspiracy trial wherein the testimony of witnesses concerning statements of co-defendants charged raised issues of hearsay as to defendant. Upon appointment of counsel at the beginning of the trial, such issues were made known to the court. The fingerprint issue here was a fortuitous and unforseeable development during the trial. We have found nothing in the record suggesting that defendant was deprived of the effective assistance of counsel in the cross-examination of the prosecution's witnesses.

■■ Defendant contends that the trial court unduly restricted cross-examination of the accomplice, Ferguson. The jury was advised of the witness's conviction for armed robbery and the sentence served thereon, and of the fact that he was on parole at the time of this burglary. Cross-examination discloses that he had been granted immunity upon that charge and that he would not have testified for the prosecution without such immunity. The court sustained an objection to a question on the cross-examination of Ferguson, "And how much time did he [the parole agent] say you would have to serve more on the armed robbery once your parole is revoked?" The trial court correctly ruled that what the agent might say was not binding on the parole board. Defendant was permitted to show Ferguson's motive to testify falsely by the probative cross-examination and we find no abuse of discretion and prejudicial error. In *People v. Barr* (1972), 51 Ill. 2d 50, 280 N.E.2d 708, cited by defendant, the court refused to permit any cross-examination upon the matter of a witness's bias or motive for testifying.

Two prior trials upon this charge of burglary had terminated in mistrials. Prior to the commencement of this trial defendant moved for discharge alleging that he had been in former jeopardy because the second mistrial came about when a police witness responded to a question by the prosecution. It is argued that the trial court erred in denying the motion.

■■ In orally ruling upon the motion the trial court found that while the question asked by the State's Attorney was unnecessary, it was not asked to gain an unfair advantage for the prosecution or upon an improper motive. Defendant cites *United States v. Jorn* (1971), 400 U.S. 470, 27 L. Ed. 2d 543, 91 S. Ct. 547. That case differs significantly in that the mistrial was declared by the court without either a motion by defendant or defendant's consent for reasons which the opinion found unnecessary to the furtherance of justice. In *Jorn*, the mistrial was not granted for the purpose for protecting the defendant, but for protecting the presumed interest of certain witnesses.

That opinion includes the statement:

"Thus, where circumstances develop not attributable to prosecutorial or judicial overreaching, a motion by the defendant for mistrial is ordinarily assumed to remove any barrier to reprosecution, even if the defendant's motion is necessitated by prosecutorial or judicial error." 400 U.S. 470, 485, 27 L. Ed. 2d 543, 556, 91 S. Ct. 547.

*Jorn* speaks of bad faith prosecutorial misconduct as that "aimed at triggering a mistrial in order to get another day in court." 400 U.S 470, 482, 27 L. Ed. 2d 543, 555, 91 S. Ct. 547. See also *United States v. Tateo* (1964), 377 U.S. 463, 468 n. 3, 12 L. Ed. 2d 448, 452 n. 3, 84 S. Ct. 1587.

■■ Our review of the facts discloses substantial evidence supporting the jury's verdict and we cannot say that the evidence fails to show defendant's guilt beyond a reasonable doubt.

The judgment is affirmed.

Affirmed.

REARDON, J., concurs.

Mr. PRESIDING JUSTICE CRAVEN, dissenting:

The majority opinion dismisses the defendant's argument that he was denied his sixth amendment rights of effective assistance of counsel as being lacking in persuasion. I do not agree.

The defendant was represented by the same counsel that represented two co-defendants—the Echols brothers. That multiple representation, upon this record, necessarily constituted a conflict of interest, the substantive effect of which was to deprive the defendant of the effective assistance of counsel.

The general rule may be paraphrased to say that a defendant is denied his sixth amendment right to counsel if, unknown to the defendant, his counsel is in a position where his full talents as a vigorous advocate for the defendant *alone* is restrained. (*Glasser v. United States* (1941), 315 U.S. 60, 86 L. Ed. 680, 62 S. Ct. 457.) For this rule to have application, the record must show that, at the time counsel was appointed, there existed a possibility of prejudice from joint representation. (See *People v. Husar* (1974), 22 Ill. App. 3d 758, 318 N.E.2d 24.) Here, the conflict of interest by one counsel's representation of both the Echols brothers and the defendant at the same trial was clearly exemplified by several things. First, counsel's inability to cross-examine the State's fingerprint expert with regard to his misidentification of the defendant as the person whose prints were identified as being on the broken glass at the site of the burglary; second, the inability to vigorously cross-examine the accomplice witnesses; and, third, the strategic inadvisability of

challenging the eyewitness identification testimony given, which while weak as to the defendant, was strong and such challenge would have been unwise as to the Echols brothers. The mixup, or at least the confusing testimony with reference to the fingerprint made, could probably never have been foreseen. It is clear, however, that the defense counsel and the court knew, or should have known, of both the accomplice testimony and the eyewitness testimony. Thus, from the inception of this trial, and certainly from the date of the appointment of counsel, there existed the possibility of prejudice by reason of the joint or multiple representation. Within the rules stated, the defendant was deprived of the effective assistance of counsel and I would reverse this conviction and remand for a new trial.