THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
DANIEL MATHES, Defendant-Appellant.
Third District   No. 77-347

Opinion filed March 14, 1979.

SCOTT, J., specially concurring.

Robert Agostinelli and Frank W. Ralph, both of State Appellate Defender's Office, of Ottawa, for appellant.

Edward Petka, State's Attorney, of Joliet (Gerry R. Arnold and John X. Breslin, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE ALLOY delivered the opinion of the court:

Defendant Daniel Mathes appeals from a conviction for the unlawful possession of a controlled substance (heroin) following a bench trial in the Circuit Court of Will County. The defendant was sentenced to a term of from 1 to 3 years in the penitentiary for possession of less than 30 grams of heroin found in the search of a Joliet apartment. On appeal, the defense argues (1) that the heroin ought to have been suppressed because the search warrant for the premises was not executed in a reasonable manner and (2) that the conviction ought to be reversed and a new trial granted because the defendant was deprived of effective assistance of counsel due to a *per se* conflict of interest existing in the public defender's dual representation of Mathes and a co-defendant.

The record, in pertinent part, discloses that members of the Metropolitan Area Narcotics Squad had obtained a search warrant for 205 Lincoln Street in Joliet, specifically, the second floor apartment in a building at 205 Lincoln Street. The search warrant authorized police to

search for narcotics at the residence. The building had two entrances, one numbered 207 and the other unnumbered. The drug agents arrived at the building around noon on February 5, 1977. One agent covered the rear entrances while the other seven agents positioned themselves near the unnumbered entrance, presumed to be the entrance to 205 Lincoln Street. That entrance contained an aluminum storm door and a locked wooden door. There were four doorbells at the entrance although none had names on them. One agent, standing on the front porch, twice announced over a bullhorn, "Police officers. We have a search warrant for the residence." At about the same time as the amplified announcements were being given, the other officers were shouting, "Police officers!" In addition to these verbal announcements, other agents were knocking on the wooden door at the entrance to 205 Lincoln. No response was made by the persons within the premises to any of these actions by the officers. After two announcements had been made over the bullhorn, and approximately 15 seconds from the first announcement, the officers on the front porch began pounding on the door with sledge hammers. Apparently because of the solid wood nature of the door, it took them some 20 seconds to effect an entry into the premises. Once inside, they found a stairway leading to the second floor and two doors at the top of the stairs. The officers went up the stairs and found one door open and Frank Grady, a co-defendant found not guilty at the trial, sitting in the room watching television. The other door at the top of the stairway was locked. This door was forced open and the agents found themselves in the hallway leading to the other rooms of the second floor apartment. It was in the hallway that defendant Daniel Mathes was apprehended.

The police found no narcotics on either Grady or Mathes, but a search of the rooms off the hallways turned up three tin foil packets containing heroin, which narcotics formed the basis for Mathes' conviction. It was not conclusively established who had rented the apartment. Mathes claimed that he was there to do cleaning and remodeling for one Thomas Fant and that Fant had given him a key so that he could get in to do the work. The State attempted to show that clothing found in the apartment was that of the defendant Mathes. At the close of evidence in the bench trial, the court found that the defendant Mathes, being in possession of the key and present within the locked portions of the apartment where the heroin was found, was at least left in custody of the drugs. It found him guilty of possession and sentenced him to 1 to 3 years. Further factual matters, pertinent to the alleged conflict of interest, will be set forth later in the opinion during a discussion of that issue.

With respect to the suppression issue, the defense claims that the heroin found in the apartment and introduced into evidence against

Mathes ought to have been suppressed because the police violated the "knock and announce" rule by forcibly entering the premises before giving the occupants a chance to respond to their announcements.

It is established that unreasonableness in the manner of executing a search warrant may require the suppression of evidence seized and that the question of the reasonableness of a search must be determined on the facts and circumstances of each case. (*Ker v. California* (1963), 374 U.S. 23, 10 L. Ed. 2d 726, 83 S. Ct. 1623.) Police conduct in announcing or failing to announce their authority and purpose prior to entry is one factor in assessing the reasonableness of an entry and subsequent search. As regards the requirement that police knock and announce their presence and purpose prior to entry, this court stated in *People v. Boykin* (3d Dist. 1978), 65 Ill. App. 3d 738, 740-41, 382 N.E.2d 1369:

> "Generally, absent exigent circumstances, when officers are executing a search warrant, they are expected to announce their authority and purpose prior to entering the premises to be searched. Implied in this general rule is the assumption that a person within be given time to respond. * * * It is noted, however, that the 'knock and announce' rule is not constitutionally mandated (*People v. Wolgemuth* (1977), 69 Ill. 2d 154, 370 N.E.2d 1067) nor is it required by statute in Illinois. It has also been recognized that the presence of exigent circumstances may relieve police officers of the knock and announce requirement. (*People v. Britz* (3d Dist. 1976), 39 Ill. App. 3d 200, 349 N.E.2d 418; *People v. Jackson* (4th Dist. 1976), 37 Ill. App. 3d 279, 345 N.E.2d 509.) Clearly, the presence of exigent circumstances is as important and relevant to the question of the amount of time an officer ought to wait prior to entering forcibly as it is to the question of whether he needs to even announce his authority and purpose prior to entry."

In *Boykin* we found that police announcements followed by suspicious noises from within provided sufficient exigent circumstances to justify a forcible entry some ten seconds after the giving of the announcements. As mentioned in that case, no rigid rule, establishing what is a reasonable amount of time for officers to wait, is applicable. The facts and circumstances of each case must be examined in making a determination as to reasonableness.

In the present case, the police had a warrant to search for drugs in the second floor apartment at 205 Lincoln Street, Joliet, Illinois. They arrived at the residence around noon on a February day. After positioning themselves at both entrances, the police gave loud oral announcements as to authority and purpose. One officer, standing on the front porch, twice announced over a bullhorn that they were police officers who had a search

warrant for the premises. In addition to the amplified announcements, the other officers shouted their presence and repeatedly knocked on the wooden door. After waiting somewhere around 15 seconds from the first announcement, during which time the officers received no response at all from within, they began attempts to forcibly enter through the front door. They actually entered the premises some 35 seconds after the initial announcement, apparently encountering some difficulty in breaking down the wooden door.

■■ We agree with the trial court that the manner of entry, under the circumstances, was reasonable. First, more than sufficient announcement was made by the police in this case. Not only were two amplified announcements made indicating police presence and purpose, but other officers shouted their presence and, also, knocked on the door. The police were justified in fearing that the suspected drugs were being concealed or destroyed by those within the apartment where no response at all was made from within during or after the announcements. The ease with which narcotics can be concealed or destroyed has often been commented upon by this court and others. (*People v. Campbell* (3d Dist. 1979), 67 Ill. App. 3d 748, 385 N.E.2d 171; *People v. Pugh* (1st Dist. 1966), 69 Ill. App. 2d 312, 217 N.E.2d 557.) We note that the warrant was executed around noon on a Saturday, and not during the late night or early morning, a time when such lack of response from within would be more consistent with innocent activity.

The defense reliance upon our opinion in *People v. Ouellette* (3d Dist. 1978), 57 Ill. App. 3d 249, 373 N.E.2d 114, is misplaced. *Ouellette* was a consolidated appeal involving forcible entries by police without any announcements at all. In one case, the police, based upon unsubstantiated suspicions that the defendant was armed and dangerous, forcibly entered his apartment in the late hours of the evening without prior announcement. In the other case, there was a similar unannounced forcible entry without adequate justification in the record. 57 Ill. App. 3d 249, 254-55.

■ In *People v. Boykin*, discussed previously, we upheld a forcible entry, seconds after the required announcements were given, where the record indicated the police heard scuffling noises from within. The defense argues that in the present case, no similar testimony as to noises or movement from within was given by the officers and that, therefore, no exigent circumstances were present. Such argument overlooks the total lack of response from within despite sufficient announcement by the police. It also overlooks the fact that the police were in no position to observe or notice activity within, since the apartment to be searched was on the second floor of the building. We also note that the police were confronted at the entrance with a wooden door that required almost 20

seconds to break down, even with more than one agent wielding a sledge hammer. The difficulty presented by the door in effecting a speedy entry to prevent possible concealment or destruction of drugs is a fact which could not have gone unnoticed by the police prior to entry. When all the facts and circumstances surrounding the execution of the warrant are considered, it is apparent that the entry by police in this case was reasonable. We conclude that no error requiring reversal was committed by the trial court in denying the defense motion to suppress.

The second issue raised by the defense is whether a *per se* conflict of interest existed because of the public defender's representation of co-defendants Mathes and Grady. Appellate counsel for Mathes argue that the defenses of the two men were antagonistic and that the public defender could not adequately represent both. It is contended that such conflict of interest deprived Mathes of the effective assistance of counsel. Before addressing the substance of this issue, however, we are met by the State's assertion that the issue has been waived because of a failure to raise it below. Reliance is placed upon *People v. Precup* (1978), 73 Ill. 2d 7, 382 N.E.2d 227.

In *Precup* the supreme court held that a conflict of interest issue, raised for the first time on appeal, had been waived by the defendants. The case involved co-defendants represented by the same public defender, and the alleged conflict lay in the presence of conflicting alibis. While conceding that separate counsel would have had to have been appointed if the issue had been brought to the attention of the trial court, the court found that it had been waived where it was not included in the defendant's post-trial motion or otherwise brought to the court's attention. (*People v. Precup* (1978), 73 Ill. 2d 7, 19.) The court noted that neither defense counsel nor the defendants raised any objection to joint representation before or during trial. This lack of objection, coupled with the failure to raise the issue in the post-trial motion, was the basis for the court's finding of waiver. In *Precup*, the court does discuss the possible application of the plain error rule in such circumstances, but it concludes that no plain error was involved in that case.

In an even more recent supreme court case involving joint representation, the court held that a conflict of interest existed which denied the defendant his right to effective assistance of counsel. (*People v. Echols* (1978), 74 Ill. 2d 319, 385 N.E.2d 644.) The court also found that the issue had not been waived by the appellant's silence. (*People v. Echols* (1978), 74 Ill. 2d 319, 329.) While the waiver issue is not discussed at length in the opinion, the basis for that finding is apparent from a review of the authorities cited in support thereof. (*People v. Coslet* (1977), 67 Ill. 2d 127, 364 N.E.2d 67; *People v. Kester* (1977), 66 Ill. 2d 162, 361 N.E.2d 569.) In both *Coslet* and *Kester*, the court found that actual

conflicts of interest existed which would be presumed to be prejudicial under the *per se* rule announced in *People v. Stoval* (1968), 40 Ill. 2d 109, 239 N.E.2d 441. After finding that a denial of the right to effective assistance of counsel was present in the cases, the court, in both, then addressed the State's argument that the issue had been waived by the defendants' failure to raise it below. In *Coslet,* the court quoted the following language with approval in support of their finding that no waiver had occurred.

> " 'The Constitution assures a defendant effective representation by counsel whether the attorney is one of his choosing or court-appointed. Such representation is lacking, however, if counsel, unknown to the accused and without his knowledgeable assent, is in a duplicitous position where his full talents—as a vigorous advocate having the single aim of acquittal by all means fair and honorable—are hobbled or fettered or restrained by commitments to others.'
>
>            * * *
>
> 'It has been pointed out the "courts indulge every reasonable presumption against waiver" of fundamental constitutional rights and that we "do not presume acquiescence in the loss of fundamental rights." A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege. The determination of whether there has been an intelligent waiver of the right to Counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience and conduct of the accused.' [Citations.]"

(67 Ill. 2d 127, 134-35.)

In *Coslet,* the court concluded that no intentional relinquishment of the right to effective assistance of counsel had been shown. In *Kester,* despite lack of objection by the defendant, despite his assent to plea agreements, and despite his statements of satisfaction with the public defender, the court found that there had been no knowing waiver of his right to effective assistance. (66 Ill. 2d 162, 169.) The rule which emerges from *Echols* and the above-cited authorities is that if an actual conflict of interest, amounting to a denial of effective assistance of counsel, is shown in the record, then a strong showing of an intentional and knowing waiver of that issue will be required before the waiver rule will be applied. We find that the rule emerging from these cases is inapplicable to the present case for the reason that, as will be discussed more fully later, there is no actual conflict of interest, resulting in a denial of the defendants' right to effective assistance of counsel, shown in the record.

    ■ Our conclusion that *Echols* does not control, however, does not necessarily require a finding that the issue has been waived on the basis of

the supreme court's decision in *Precup*. In the present case, the defendant did not make objection to the joint representation below and no post-trial motion was filed by defense counsel. The State, relying upon *Precup*, argues that therefore the issue of a conflict of interest has been waived. We find *Precup* distinguishable in two respects. That case involved a jury trial where a post-trial motion is required to preserve issues on appeal. (*People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856.) The instant case involved a bench trial wherein no post-trial motion is required to be filed. (*City of Evanston v. Piotrowicz* (1960), 20 Ill. 2d 512, 515, 170 N.E.2d 569.) And while the waiver rule may still be applied in a bench trial where an issue is never brought to the court's attention, the rule is not as strictly applied there. (See *People v. Guynn* (3d Dist. 1975), 33 Ill. App. 3d 736, 338 N.E.2d 239.) Another distinction between the instant case and *Precup* is that, unlike the situation in *Precup*, in this case there was no post-trial review of the case by an independent attorney who could have been expected to see any conflict of interest issue, even if, for whatever reasons, trial counsel might have overlooked it. (See *People v. Precup* (1978), 73 Ill. 2d 7, 18.) Accordingly, while not required to reach the issue, we proceed to a consideration of the substance of the conflict of interest issue raised by the defense on appeal. We find the issue to be without merit.

The argument presented by appellate counsel is that a conflict of interest existed because the defenses of the co-defendants were antagonistic. The alleged conflict revolves around the evidence as to the presence of the locked door and each defendant's position with respect to that door. The established facts indicated that Grady was found by police in the outer room watching television. He had no access to the heroin except through a locked door to which he had no key: Mathes was apprehended within the locked portion of the apartment which did contain narcotics. He had a key to that portion of the apartment. The defense now argues that trial counsel understandably emphasized Grady's lack of access, and that such emphasis on access was damaging to the co-defendant Mathes. At the bench trial, the facts concerning the accessibility of each defendant were addressed by defense counsel in his cross-examination of State witnesses. Such action was understandable, given that the facts were established by the State on direct examination. There was nothing in the cross-examination which sought to place Mathes in a more detrimental light than Grady. The facts as to accessibility were also understandably addressed by trial counsel when he was arguing the directed verdict motions. He argued that there was no proof that Grady had rented the apartment or that he had any contact with the drugs. He argued that there was no constructive possession shown as to Grady. With respect to Mathes, defense counsel argued that the State had failed to

show any act of possession and that it had failed to prove control sufficient to show constructive possession. At no time during the arguments did he sacrifice Mathes' best interests to further those of Grady. Nor did he hold back anything which might have been favorable to Mathes because it might hurt Grady. One specific remark is noted by the defense, and that is when trial counsel pointed out the obvious to the court, that while the case as to Mathes was very weak, it was even weaker as to Grady. Given the favorable thrust of the comment to both men, the fact of comparison does not show any conflict. See *People v. Smith* (4th Dist. 1974), 19 Ill. App. 3d 138, 144-45, 310 N.E.2d 818.

The supreme court has most recently stated the rules with respect to conflicts of interest involving dual representation in *People v. Echols* (1978), 74 Ill. 2d 319, 385 N.E.2d 644, and *People v. Berland* (1978), 74 Ill. 2d 286, 385 N.E.2d 649. In *Echols*, the court stated:

> "Although this court has in the past refused to presume that the interests of criminal co-defendants are necessarily hostile (e.g., *People v. Durley* (1972), 53 Ill. 2d 156, 160; *People v. Somerville* (1969), 42 Ill. 2d 1, 9-10), where such hostility is shown to exist, the joint representation of the conflicting interests denies a defendant the effective assistance of counsel, and such denial is presumed to be prejudicial (*People v. Ware* (1968), 39 Ill. 2d 66, 67-68; *People v. Coslet* (1977), 67 Ill. 2d 127, 133. See also *People v. Kester* (1977), 66 Ill. 2d 162, 168; *People v. Stoval* (1968), 40 Ill. 2d 109, 113.) Thus, our threshold inquiry must be into the degree of hostility, if any, between the interests of appellant and the Echols brothers." (*People v. Echols* (1978), 74 Ill. 2d 319, 326-27.)

In *People v. Berland*, the court stated:

> "A defendant must show an actual conflict of interest manifested at trial in order to prevail in a constitutional claim of ineffective assistance of counsel due to joint representation of co-defendants by a single attorney." (*People v. Berland* (1978), 74 Ill. 2d 286, 299-300.)

If the record reveals no actual conflict of interest, then it is unnecessary to apply the *per se* rule which presumes prejudice. *People v. Berland*; *People v. Ware* (1968), 39 Ill. 2d 66, 233 N.E.2d 421.

The initial inquiry for us, then, is whether there is an actual conflict of interest shown in the record. The case of *People v. Ware* is indicative of most of the cases in which courts have found that the presence of antagonistic defenses amounted to a conflict. In *Ware*, one defendant pleaded guilty and then testified against the other. (See also *People v. Meng* (5th Dist. 1977), 54 Ill. App. 3d 357, 369 N.E.2d 549.) That such "complete antagonism" is not always required, however, is evident from the recent decision in *Echols*. There, a fingerprint found at the scene of

the crime was introduced into evidence by the State. The print, belonging to one of the defendants Echols, was mistakenly identified by a State witness as belonging to defendant Wilson. Trial counsel, jointly representing the defendants, did not seek to establish that the print did not belong to Wilson, a fact of considerable benefit to him although obviously harmful to his co-defendants. Also, counsel in closing argument chose to point to the ambiguity concerning the print identification as limiting its probative value as to all the defendants, rather than specifically arguing that the print probably did not belong to appellant Wilson. The supreme court stated:

> "Once the confusion occurred regarding the fingerprint, appellant's interests and those of the Echols brothers diverged dramatically. It requires no speculation to reach the conclusion that competent, independent counsel would have advised appellant to resolve that confusion, and would have argued in closing that, on balance, given all of the evidence, appellant never entered the tavern." (*People v. Echols* (1978), 74 Ill. 2d 319, 328.)

The court reversed judgment and remanded for a new trial.

■■ In the present case, the defenses of Grady and Mathes were not completely antagonistic, and neither were their interests divergent so as to give rise to a conflict of interest for trial counsel representing them both. There was no evidence given by either defendant which implicated the other. Nor did trial counsel refrain from producing evidence or making argument which would have benefited one defendant at the expense of the other. The defenses put forth on behalf of the co-defendants were consistent and in no way hostile to each other. Counsel argued that as to both the State had failed to show control over the heroin sufficient to establish constructive possession. Neither the defenses put forth, nor any action of counsel, attempted to play one defendant's position off against the other's position and interests.

■ It was not counsel's act or omission with respect to the defenses or the evidence that helped Grady and hurt Mathes. Rather, it was the evidence itself as established by the State. Grady was outside the locked apartment rooms and had no key. Mathes was inside the locked rooms and had a key. Even independent counsel for Mathes would have had to address the presence of the locked door and the possession of the key. That evidence was central to the case against Mathes. At trial, Mathes' defense to the evidence was that he was visiting the apartment to do remodeling and cleaning for a friend whose apartment it was. Nothing in the defense of co-defendant Grady undermined Mathes' defense or cast it in detrimental light. It was the established facts which were detrimental to Mathes, and counsel could not have changed the facts. Appellate counsel suggest,

without elaboration, that independent counsel could have somehow minimized the significance of the locked door and the key in a more effective way than the public defender did at trial. It must again be pointed out that it was the State that emphasized those facts and even independent counsel would have had to address them. Here counsel argued that Mathes had explained his presence, that the evidence was insufficient to show constructive possession, and that it was a weak case. It is difficult to see how counsel with undivided loyalties could have appreciably minimized the significance of the door and the key more than trial counsel in fact did. In any event, that independent counsel may have pursued a different strategy does not furnish a basis for this court to find the presence of an actual conflict. (*People v. Echols* (1978), 74 Ill. 2d 319, 385 N.E.2d 644.) No actual conflict of interest was shown to have existed in the present case.

The decision of the circuit court is affirmed.

Affirmed.

BARRY, P. J., concurs.

Mr. JUSTICE SCOTT, specially concurring:
I concur in the opinion and reasoning of the majority; however, I believe defendant's reliance on *People v. Ouellette* (1978), 57 Ill. App. 3d 249, 373 N.E.2d 114, requires a few added comments. The court today applies the rule of reasonableness in judging the legality of a search's execution. Such a rule was established in *Ker v. California* (1963), 374 U.S. 23, 10 L. Ed. 2d 726, 83 S. Ct. 1623, and has been adopted by the Illinois courts. (*People v. Boykin* (1978), 65 Ill. App. 3d 738, 382 N.E.2d 1369.) As the majority opinion correctly observes, the "unreasonableness in the manner of executing a search warrant may require the suppression of evidence seized * * *." Further, the majority holds that "no rigid rule, establishing what is a reasonable amount of time for officers to wait, is applicable. The facts and circumstances of each case must be examined in making a determination as to reasonableness."

I believe *Ouellette* adopts the same rule. In that decision the court reflected that the "dignity and privacy protected by the Fourth Amendment demands a certain propriety on the part of policemen, even after they have been authorized to invade an individual's privacy by a valid search warrant." (*People v. Ouellette* (1978), 57 Ill. App. 3d 249, 253, 373 N.E.2d 114, 117.) Propriety is exhibited by the police if they execute their search in a reasonable manner in light of the facts and circumstances of each case. The announcement of authority and the length of any period

allowed for voluntary surrender are merely two of many factors to be weighed in ascertaining the reasonableness of a search. *People v. Wolgemuth* (1977), 69 Ill. 2d 154, 370 N.E.2d 1067; *People v. Boykin.*

Defendant points to language in *Ouellette* which provides that "No matter how great the probable cause is to believe a man guilty of a crime or in possession of the fruits of a crime, he must be given a *reasonable* opportunity to voluntarily surrender his privacy." (Emphasis supplied.) Defendant construes this statement to mean that the police must, in all cases, await a suspect's voluntary submission to authority. Such a construction is not necessary to the holding in *Ouellette* nor is it required by the express language of the *Ouellette* opinion when considered in its entirety. Rather, the opportunity for voluntary submission must be reasonable in light of numerous facts and circumstances; and, "the announcement of authority and purpose is merely one of the many factors to be weighed in ascertaining if the entry to * * * search is * * *. reasonable." (*People v. Ouellette.*) The court in *Ouellette* finds it necessary to discuss whether, in weighing the factors before it, sufficient circumstances existed to cause an unannounced forced entry to be reasonable. We there concluded that under the facts and circumstances such an entry was unreasonable. The majority herein astutely observes just one of many factors that distinguishes *Ouellette* from the case at bar, *i.e, Ouellette* involved "forcible entries by police without any announcements at all." If for no other reason, defendant's reliance on *Ouellette* is misplaced.

Quite often in these times search warrants are issued wherein the object of the warrant is readily disposable contraband. The Fourth Amendment does not mandate, nor does this court require, that law enforcement officials should be powerless to search for and seize such contraband. Nevertheless, the Fourth Amendment does mandate that individual dignity and privacy must in every case be protected from infringement by improper police conduct. I believe today's decision correctly states the reasonableness standard which should govern police conduct in executing searches.

BARRY, P. J., concurs.