THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
RANDALL WILLEY, Defendant-Appellant.

Third District No. 79-938

Opinion filed July 14, 1980.

Robert Agostinelli and Peter A. Carusona, both of State Appellate Defender's Office, of Ottawa, for appellant.

John R. Clerkin, State's Attorney, of Macomb (John X. Breslin and Kenneth A. Wilhelm, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE STENGEL delivered the opinion of the court:

This is an appeal by defendant Randy Willey from his convictions for burglary, the unlawful use of weapons, criminal damage to property, aggravated assault, and battery following a jury trial. As a result of being found guilty on these charges, defendant was sentenced to a 3-year term

of imprisonment for burglary and concurrent terms of 364 days for the other offenses.

Tried together with defendant was his brother, codefendant Steven Willey, whose appeal has been addressed in a separate opinion. (*People v. Willey* (1980), 85 Ill. App. 3d 734.) The facts pertinent to Steven's appeal are also relevant to this appeal.

When defendants were first charged by information, a public defender was appointed to represent them, but subsequently defendants retained private counsel, with one attorney to represent both defendants, and the public defender withdrew. As a result, the public defender was granted an order directing the circuit clerk to make payable to the public defender's reimbursement fund a check in the amount of $47.50, to be noted against Randy's bond, and $70, to be noted against Steven's bond.

Each defendant argues that the statute allowing for such reimbursement (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 110—7(g)) is unconstitutional for various reasons. Even though this statute has now been declared unconstitutional (*People v. Cook* (1980), 81 Ill. 2d 176, 407 N.E.2d 56), reimbursement is required from these defendants on equitable grounds. In this case, the public defender was appointed for Steven on December 27, 1978, and for Randy on January 2, 1979, with these appointments based on an affidavit of indigency by each defendant. On January 4, 1979, the defendants appeared in court with privately retained counsel.

■■ Based on the equitable doctrine of unjust enrichment, a quasicontract or a contract implied in law must here be found. By this contract, defendants are considered to have impliedly promised to compensate the county for legal services rendered by the public defenders when it appears from the facts that defendants were not indigent and could afford to retain private counsel. (See *County of Champaign v. Hanks* (1976), 41 Ill. App. 3d 679, 353 N.E.2d 405.) Furthermore, such sum as may be required to be repaid pursuant to this implied contract may be satisfied from defendants' bail bond deposit. See *People v. Nicholls* (1978), 71 Ill. 2d 166, 374 N.E.2d 194.

For the consideration of the remaining issues, it is necessary to summarize the evidence adduced at trial. Four occurrence witnesses testified for the State: Charles Simpson, the owner of Chick's Lounge; Maxine Games, the bartender; Donald Hainline; and Michael Johnson, a peace officer for the village of Blandinsville. Their testimony tended to establish that on the day in question at approximately 3 p.m., defendants entered Chick's Lounge. While Randy was having a friendly conversation with Simpson, Steven approached Maxine Games, the bartender, and was refused a drink. Steven then told Randy that they could not get a drink, and according to Simpson, Randy stated that if they could not get a drink

they might as well tear the place up. Randy then proceeded to toss some bar stools, four or five of which became bent. No one observed Steven throw any chairs.

Simpson, who had been sitting out front, went behind the bar. Once there, he told Randy that Steven was barred because of something he had done a few weeks before, but only Steven was barred. According to Simpson, both Steven and Randy started calling everyone names and made physical threats. Randy then ran down the bar towards Hainline, who was talking to Steven and struck Hainline twice with his fist.

Hainline also testified that Randy struck him twice with his fists in the head area. As a result Hainline's glasses were bent. Hainline also received a small cut on the corner of his eye and a black eye. Hainline indicated that he never touched Randy, that after Randy threw some chairs, Hainline attempted to calm him down because they were friends, and that he then told Games to "get on the phone" because he could not talk to Randy. It was after this statement that Randy struck him. Games indicated that she saw Randy shove Hainline around, but did not see Randy strike any blows.

According to Hainline and Simpson, after Randy struck Hainline, Officer Michael Johnson entered the lounge. Johnson was not in uniform and did not show a badge or other identification. He had a gun in his belt but had no holster. According to Simpson, Johnson identified himself as a peace officer, told Steven he was under arrest, Steven replied that Johnson was not going to arrest him, and then they started wrestling. Games also testified that Steven stated to Johnson that Johnson was not going to arrest him.

Johnson testified that he told Steven he was under arrest for disorderly conduct and, "You know that I'm a police officer." Steven then began to move away, and Johnson told him that if he resisted, he would be charged with resisting arrest. Steven then turned to Randy and stated, "Randy, I'm going with him." At that point Randy started throwing bar stools. After Johnson approached Randy and informed him that he too was under arrest, Steven told Randy, "Let's take him." Steven and Johnson then began wrestling. At one point, Steven yelled, "Kill him Randy, kill him." Randy replied that he was going to get his gun from his car and kill everyone and then left the tavern. Feeling he had to act quickly, Johnson struck Steven sharply with his flashlight three times in the back. This immobilized Steven, and Johnson put him in a deadlock between his legs.

Johnson saw Randy return through the door holding a shotgun at hip level. Johnson yelled three times to Randy to drop the gun, but Randy did not make any effort to drop the gun. Randy turned and pointed the gun at Johnson. At least three other persons were in the line of fire.

Johnson then fired three shots in rapid succession from his .38 automatic. The shotgun was never fired.

Simpson, Hainline and Games tended to corroborate Johnson's accounts of the struggle and Randy's exit and return, although Simpson did not see Randy point the shotgun.

After Randy was shot, Johnson handcuffed Steven and administered first aid to Randy. Johnson indicated that the shotgun fell beside Randy when he was shot. He identified the shotgun as a .12-gauge riot Smith and Wesson slide-action pump gun which was issued to him by the city of Blandinsville and was in his car when he arrived at Chick's Lounge.

Other evidence presented tended to show that the Willey car contained no weapons. Stipulations were also entered to the effect that: (1) Chick's Lounge was a place licensed to sell intoxicating beverages; (2) the police car, which contained the shotgun, and the shotgun itself were the property of the village of Blandinsville; (3) the shotgun had a value less than $150; and (4) the shotgun was a deadly weapon. The State then moved for dismissal of the criminal trespass counts as to both defendants, and following these dismissals, the State rested.

Randy Willey testified for the defense. On the day in question, he had been drinking all day. After he and Steven arrived at Chick's Lounge, Randy was talking to Simpson when he heard his brother Steven say that he could not get a drink. This led to an argument between Steven and Randy, on one side, and Hainline and Simpson, on the other about why Steven was barred. Randy indicated that he shoved a bar stool, but he did not throw it. He denied any fisticuffs between himself and Hainline. This argument lasted until Johnson, who Randy knew to be a peace officer, entered the bar.

According to Randy, when Johnson arrived he walked up to Steven and said, "You're under arrest," and Steven replied, "What did I do?" Then Johnson hit Steven with a flashlight. Randy estimated that 30 seconds elapsed from the time Johnson told Steven he was under arrest to the time he hit Steven with the flashlight. Steven and Johnson then began fighting and went to the ground. When Randy asked them to "break it up," Johnson told Randy to stay away or he would blow Randy's head off. Randy lost his temper and replied that Johnson would not blow his head off because he, Randy, was going to blow Johnson's head off. Randy then left the bar and went outside to the parking lot. He was scared, and he went to his car to look for a club. On his way back to the bar, Randy saw a shotgun hanging in Johnson's squad car and he reached in and took the gun. Randy ran to the door of the tavern and then, as he started to put the gun down, Johnson shot Randy first in the arm, then in the side. Randy indicated he never injected a shell in the gun and was not holding the shotgun when the first shot was fired. Randy also testified that when he

took the shotgun from the squad car, he was only planning to scare Johnson and had no intent to keep the gun.

Steven Willey also testified. Steven indicated that Hainline told him he was barred and could not get a drink. Steven then informed Hainline that he, Steven, was going to smack the hell out of him and that would give them a reason to bar him. Randy then slid a bar stool and came over behind Steven. Steven then stated to Randy that they should go somewhere else, but at about this time, Steven was hit in the back of the head and went to the floor. He said he grabbed the legs of the person who had struck him, but did not know who it was. While they struggled for four or five minutes, Steven testified he never saw Johnson's face. Steven denied ever striking or butting Johnson. During their struggle Johnson continued to hit Steven with a club. Randy grabbed Johnson's arms and told him to stop hurting Steven. Johnson told Randy to get away or he would blow Randy's brains out. Randy then left the bar and Steven was put in handcuffs.

When Randy returned to the bar, Johnson shot him three times. Randy, according to Steven, did not have a gun when he came to the door. Nor were any words spoken before Johnson shot Randy. Other evidence presented showed Randy was shot in the right arm and left side above his belt line.

Based on this testimony, defendant raises two issues: (1) whether defendant was denied the effective assistance of counsel because one attorney's representation of both defendants was a conflict of interest, an issue also raised in Steven's appeal, and (2) whether defendant was proven guilty of burglary beyond a reasonable doubt. Before deciding the question of effective assistance of counsel, we must determine whether, as the State suggests, these defendants have waived consideration of this issue for purposes of review by not including it in the post-trial motion.

■■ An attorney would not ordinarily be expected to include his or her own inadequacy as a ground for reversal in a post-trial motion. (*People v. Pendleton* (1977), 52 Ill. App. 3d 241, 367 N.E.2d 196.) Where no independent counsel has entered the case who might detect the conflict and raise the issue in the post-trial motion, the failure of trial counsel to raise the issue in the post-trial motion does not constitute a waiver of a claim of ineffective assistance of counsel resulting from joint representation of codefendants. (*People v. Hunt* (1979), 73 Ill. App. 3d 1034, 392 N.E.2d 793.) This court has observed:

> "It has been noted that the inquiry into the effect of representation of more than one party has received attention recently in opinions of courts of this State. (See *People v. Vriner* (1978), 74 Ill. 2d 329, 385 N.E.2d 671; *People v. Berland* (1978), 74

Ill. 2d 286, 385 N.E.2d 649; *People v. Echols* (1978), 74 Ill. 2d 319, 385 N.E.2d 644; *People v. Mathes* (1979), 69 Ill. App. 3d 275, 387 N.E.2d 39; *People v. Spicer* (1978), 61 Ill. App. 3d 748, 378 N.E.2d 169.) As the defense concedes, it is clearly established that joint representation of co-defendants does not create a *per se* violation of a defendant's right to effective counsel. There is no presumption that the interests of criminal co-defendants are necessarily hostile. (*People v. Echols* (1978), 74 Ill. 2d 319, 385 N.E.2d 644.) To prevail upon a claim of ineffective assistance of counsel, premised upon the joint representation by an attorney for co-defendants, a defendant ' "must show an actual conflict of interest manifested at trial." ' (*People v. Mathes* (1979), 69 Ill. App. 3d 275, 387 N.E.2d 39, 44-45, quoting *People v. Berland* (1978), 74 Ill. 2d 286, 299-300.) If, however, an actual conflict of interest is established, then prejudice will be presumed to have resulted. (*People v. Echols* (1978), 74 Ill. 2d 319, 327.) A logical inquiry is the extent to which the interests of the co-defendants were conflicting." *People v. Hunt* (1979), 73 Ill. App. 3d 1034, 1037, 392 N.E.2d 793, 795-96.

■■ The difference between Randy's and Steven's versions of the incident, which is the primary basis for the conflict of interest argument, is that Randy testified, as did all the other occurrence witnesses, that Steven was aware he was fighting Officer Johnson while Steven testified that the person clubbed him from behind and he had no knowledge he was fighting with a peace officer. Since Steven's defense to aggravated battery and resisting arrest charges was that he had no knowledge that his opponent was a peace officer, Randy's testimony tended to inculpate his codefendant brother, and to the extent the credibility of each defendant was in question, an actual conflict of interest existed. While the State argues that this was prejudicial to neither defendant, the Illinois Supreme Court has held that, where an actual conflict of interest exists, the prejudice will be presumed. (*People v. Echols.*) Here defendants should have had separate counsel.

We have also considered defendant's contention that he was not proven guilty beyond a reasonable doubt. We think it clear that such contention is without merit. The State's evidence was sufficient to support Randy's conviction.

For the reasons stated, the judgment of the Circuit Court of McDonough County is reversed, and the cause remanded for a new trial consistent with this opinion.

Reversed and remanded.

ALLOY, P. J., and SCOTT, J., concur.